David L. BOLIN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 62A04–9308–CR–305 [1].

Court of Appeals of Indiana,
First District.

May 23, 1994.

1. This case was transferred to this office April 6, 1994, by direction of the Chief Judge.

John D. Clouse, John P. Brinson, Evansville, for appellant.

Pamela Carter, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

David L. Bolin appeals from his conviction of arson for hire resulting in bodily injury, a

class A felony for which he received a sentence of 40 years. He presents six allegations of error, but one is dispositive:

Did the trial court err in admitting evidence of an uncharged offense?

We reverse.

The evidence reveals that the State charged Bolin with arson for hire. Ind.Code 35–43–1–1(b). At trial, William Hendrick testified that Bolin had contacted him about burning a house Bolin then owned in Tobinsport, Indiana. At the time, Bolin had rented the house to his former girlfriend. Bolin had showed Hendrick the house and had promised Hendrick $600 or $700 to burn the house. One to three weeks later, on December 19, 1985, Hendrick had burned the house down by setting fire to clothes in a closet. Two or three weeks after that, Bolin had paid Hendrick $600 or $700 for having burned the house. Bolin had never told Hendrick why he had wanted to burn the house.

During its case-in-chief, the state elicited evidence about a later, uncharged arson for hire, for which Bolin had hired Hendrick. On appeal, Bolin claims that the admission of this evidence constitutes reversible error. About this crime, Hendrick testified that Bolin had again contacted him about burning a house. Bolin had showed him a house in Cannelton, Indiana, and had promised Hendrick $600 or $700 to burn the house. Some three weeks later, on May 10, 1986, Hendrick had burned this house as well by setting fire to clothes in a closet. Two or three weeks later, Bolin had again paid Hendrick $600 to $700 for having burned the house.

Hendrick eventually pled guilty to the later arson (by means of interstate travel for "racketeering") in federal district court. In the trial below, Hendrick testified that Donald King had helped him set the later fire and that he had paid King for the assistance. King corroborated this testimony and had also pled guilty to arson (by means of interstate travel for "racketeering") in a different federal district court. Hendrick further testified that he had approached Donald Embry for assistance in burning the house but that Embry had refused, and Embry corroborated this testimony.

The general rule in Indiana is that evidence is relevant if it tends logically to prove or disprove a material issue of fact. *Rafferty v. State* (1993), Ind.App., 610 N.E.2d 880. Evidence tending to prove a material fact is admissible even if the tendency to provide such proof is slight. *Id.* Nevertheless:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person or to show action in conformity therewith. It may however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident

. . . . .

*Lannan v. State* (1992), Ind., 600 N.E.2d 1334, 1336 n. 4 (adopting Federal Rule of Evidence 404(b)). This rule was in force during Bolin's trial.

Whenever the state attempts to introduce evidence of instances of the defendant's uncharged misconduct, the trial court must look to see whether that evidence is offered to prove something other than the defendant's bad character or propensity to commit the charged crime. *Hardin v. State* (1993), Ind., 611 N.E.2d 123, 129. If the evidence is offered only to produce the "forbidden inference"—that the defendant acted badly in the past, and that the defendant's present, charged actions conform with those bad acts—then the evidence is inadmissible. *Id.* The purposes listed in Fed.R.Evid. 404(b) are permissible but non-exclusive purposes. *Id.*

The trial court determined that the uncharged arson was admissible as part of a "plan." In *Lannan,* our supreme court stated that Fed.R.Evid. 404(b) is consistent with prior descriptions of Indiana's general rule, save for the depraved sexual instinct exception, including "common scheme or plan." *Lannan,* 600 N.E.2d at 1339 n. 11.

That court has also recognized two branches of common scheme or plan. The first permits proof of identity by showing the defendant committed crimes with identical *modus operandi.* That is, the State may prove identity by showing that the similari-

ties between the prior offense and the crime charged are so strong and the method so clearly unique that it is highly probable that the perpetrator of both is the same person. *Lannan*, 600 N.E.2d at 1340. However, the repeated commission of similar crimes is not enough to qualify for the exception to the general rule. The acts or methods employed must be so similar, unusual, and distinctive as to earmark them as the acts of the accused. *Id.* (quoting *Willis v. State* (1978), 268 Ind. 269, 272, 374 N.E.2d 520, 522). A strong showing is required that the different criminal actions were so similarly conducted that the method of conduct can be considered akin to the accused's signature. *Penley v. State* (1987), Ind., 506 N.E.2d 806. This branch also permits the admission of extrinsic offenses to establish state of mind although a lesser degree of similarity between the acts is required. *See Hazelwood v. State* (1993), Ind.App., 609 N.E.2d 10.

 The State has consistently asserted that the uncharged arson for hire was admissible under this theory. The similarities and uniqueness advanced by the State are that Bolin approached Hendrick for each fire, that Bolin hired Hendrick in each instance to commit arson, that Bolin told Hendrick each time that if he burned the structure in question he would be paid an agreed-upon amount, that Hendrick had agreed to commit each offense, that Bolin had paid Hendrick the same amount for each arson, that Bolin had told Hendrick how to enter each house, that Hendrick had gone to each residence at night, that Hendrick had set fire to clothes without "inflamant" in the closets of each house and then had left, and that Bolin had paid Hendrick after each fire. Defense counsel responded:

MR. RIPSTRA: Well, Judge, it isn't a signature. It's two similar crimes, but a signature is something that is, to me, is unusual and it's what it says. Its a signature of the crime. Any arson for hire, where someone was paid, would have been done line [sic] this whether it's once or 50 times.

The two arsons for hire were clearly similar. The repeated commission of similar crimes, however, is not enough to qualify for the exception to the general rule. The acts or methods employed here were not unique, so as to earmark them as the acts of the accused. They were common to many arsons for hire. Also, as explained below, Bolin's state of mind in this case was not in serious dispute. The uncharged arson for hire therefore does not qualify for admission under the first branch of common scheme or plan. *See Hazelwood*, 609 N.E.2d 10 (although in both cases defendant had staged an incident, had caused a false police report to be filed, and had then filed a fraudulent insurance claim, the uncharged act did not qualify for admissibility under either branch of the common scheme or plan exception).

 The second branch of common scheme or plan permits evidence of other criminal activity to demonstrate the common plan or scheme of criminal activity from which the accused originated the charged crime. The test is not whether the other offenses have certain elements in common with the charged crime but whether the other offenses tend to establish a preconceived plan by which the charged crime was committed. The crimes must be so related in character, time, and place of commission as to establish some plan which embraced both the prior and subsequent criminal activity and the charged crime. This is also known as *res gestae*. *Lannan*, 600 N.E.2d 1334, 1339 (quoting *Malone v. State* (1982), Ind., 441 N.E.2d 1339).

 The record does not show that the uncharged arson for hire was part of a preconceived plan related to the instant arson for hire or a part of the same transaction. Also, the evidence of the uncharged arson for hire does not complete the story of the present offense. Further, the evidence does not reveal that the hiring of Hendrick encompassed both arsons. At most, the evidence would show that Bolin hired Hendrick to commit arson a second time because he had done a good job with the first one. This does not qualify as a "plan." *See Hazelwood*, 609 N.E.2d 10.

 Moreover, the uncharged arson for hire does not provide proof of any of the other permitted uses under Fed.R.Evid.

404(b). The exceptions in Rule 404(b) are available when a defendant goes beyond merely denying the charged crime and affirmatively presents a claim contrary to the charge; and the State may then respond by offering evidence of prior crimes, wrongs, or acts to the extent relevant to prove some issue of genuine dispute other than "character of a person in order to show action in conformity therewith." *See Wickizer v. State* (1993), Ind., 626 N.E.2d 795 (intent exception); *James v. State* (1993), Ind.App., 622 N.E.2d 1303 (intent and knowledge exceptions). None of the other "exceptions" listed in the 404(b) were in genuine dispute in this case: motive, intent, preparation, knowledge, identity, or absence of mistake or accident. Further, the State does not contend that these issues were in genuine dispute and does not claim that the uncharged offense is admissible under any of these "exceptions." The State also does not claim that the uncharged crime provides proof of anything other than Bolin's bad character. The evidence, in fact, relates only to proof of Bolin's character or his propensity to act in conformity with that character. This is the "forbidden inference." The admission of the uncharged arson for hire was error.

We must next consider whether reversal is required. The erroneous admission of evidence will result in reversal only if there was prejudice to the defendant's substantial rights. *Martin v. State* (1993), Ind., 622 N.E.2d 185, 188. In such a situation, this Court has a duty to assess the probable impact of the evidence on the jury. *Id.* Reversal is compelled where the record as a whole discloses that the erroneously admitted evidence was likely to have a prejudicial impact upon the mind of the average juror, thereby contributing to the verdict. *Id.*

Here, a review of the entire record reveals that the erroneous admission of evidence was likely to have had a prejudicial impact so as to have contributed to the guilty verdict. The only evidence which connected Bolin to a crime came from Hendrick. He connected Bolin to the instant arson for hire and to the uncharged arson for hire. Other witnesses corroborated Hendrick's involvement with the later fire but did not connect Bolin to the charged fire with anything other than statements Hendrick would have made at or near the time of the later fire. Also, three factors present here increase the likelihood that the jury could have drawn the "forbidden inference." The similarity between the charged crime and the uncharged crime was great; the evidence of the uncharged crime was more abundant and more extensive than that for the charged crime; and the State relied upon the uncharged crime, in part, in its final argument.

The record, however, also contains evidence from a previous occupant of the house involved in the present offense. That evidence showed that Bolin had told the previous occupant that he could live in another place for a year free of charge if he made sure the house caught fire. This evidence tends to show that charged offense occurred with Bolin's deliberate involvement and therefore decreased the likelihood that the jury might have drawn the forbidden inference. Also, some of the evidence shows that Bolin supplied the money for bail in the later uncharged offense and that Bolin allowed Hendrick to keep the money after that charge was dropped. Hendrick testified that he though he was allowed to keep the money to keep his mouth shut about the uncharged offense; but, inasmuch as the State did not learn of the criminal nature of the charged offense until after the charges had been dropped for the uncharged offense, the jury could have concluded that Bolin had let Hendrick keep the money so Hendrick would keep quiet about both fires. This may be considered circumstantial evidence of Bolin's guilty knowledge, and it decreases the likelihood that the jury might have drawn the forbidden inference about Bolin's character.

Nevertheless, these latter factors do not lessen the impact that the improperly admitted testimony likely had on the mind of the average juror. This is especially true in the present case because the trial court did not instruct the jury that the evidence could not be used to judge Bolin's character. When Hendrick was allowed to connect Bolin with the uncharged arson for hire, the effect was to assert that Bolin was surely involved with the instant offense because he has a propen-

sity to engage in arson for hire with Hendrick. A substantial likelihood exists that the forbidden inference contributed to the verdict and thereby had an impact upon Bolin's substantial rights. We therefore reverse and remand for a new trial.

Judgment reversed.

NAJAM and GARRARD, JJ., concur.