**Donald REYNOLDS, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 50A04–9409–CR–378.

Court of Appeals of Indiana.

June 6, 1995.

James P. Hayes, Holmes & Hayes, Plymouth, for appellant.

Pamela Carter, Atty. Gen., Suzann Weber Lupton, Deputy Atty. Gen., Indianapolis, for appellee.

**OPINION**

DARDEN, Judge.

*STATEMENT OF THE CASE*

Donald Reynolds appeals his convictions by jury of two counts of burglary [1], one as a class B felony and one as a class C felony, and five counts of class D felony theft.[2] We affirm.

---

**1.** Ind.Code 35–43–2–1.

**2.** Ind.Code 35–43–4–2.

## ISSUES

I. Did the trial court err in admitting evidence of Reynolds' prior uncharged misconduct?

II. Did the trial court err in sentencing Reynolds?

III. Is there sufficient evidence to support Reynolds' convictions?

## FACTS

In early March 1993, Plymouth Police Department Officer Clyde Avery responded to a call from Ludwig Marathon Station. Owner Paul Ludwig, who operated a trading card business in one of the station's buildings, reported that the building's doors had been pried open and that more than four thousand dollars worth of trading cards had been stolen. On March 9, 1993, Marshall County Sheriff's Department Patrol Sergeant Rex Gilliland responded to a residential burglary call at Denise Atkins' house on 9th Road. The house's occupants reported that they had returned home and discovered that several items, including jewelry, a television, a VCR, compact disks and a camera, had been stolen.[3]

On March 20, 1993, Gilliland received a call from his neighbors, Mr. and Mrs. Miller. The Millers told Gilliland that they had found some items in their daughter Angie Powers' car which they suspected had been stolen. Gilliland advised Powers of her rights, and Powers consented to a video-taped statement. Two days later, the Powers family contacted Gilliland and advised him that their daughter wanted to speak with him about several other thefts in which she had been involved.

Powers told Gilliland that she had dated Ron Reynolds, Donald Reynolds' twin brother. According to Powers, the three of them had participated in several thefts to support their crack cocaine habit. One evening, the Reynolds brothers discussed breaking into Ludwig's card shop. Powers, Reynolds and Ron went to the shop in separate cars—Powers and Ron in one, and Reynolds in another. When Powers and Ron arrived, Reynolds had already broken down the back door of Ludwig's and left the premises.

Powers and Ron found Reynolds at Mike and Teresa Cummins' trailer, and they helped him carry trading cards into the trailer.[4] Powers, Reynolds and Ron returned to Ludwig's because Reynolds had left the lug wrench that he had used to pry open the door in the store. Reynolds and Ron carried out additional boxes of trading cards, and took them to the Cummins' trailer. Teresa Cummins bought the cards. She gave Powers a check for $200.00, and she sent a $700.00 check to Reynolds' parents so that the money would be used to get Reynolds' car out of impoundment.

Powers further stated that, several days later, after she, Reynolds and Ron had spent the $200.00 which she had received from Cummins, they went to a house on 9th Road. Reynolds kicked in the door, and he and Powers entered the house and took a television, a VCR, and a pillowcase filled with items including jewelry, a camera and compact disks. Ron waited outside in Powers' white Capri.

As a result of Powers' statements, the police obtained a search warrant and searched Cummins' trailer. Police officers found "thousands" of sports cards, many still in their original packaging. (R. 160). Ludwig identified some of the cards as those which had been stolen from his shop.

Powers testified at Reynolds' trial, and a jury convicted him of two counts of burglary and five counts of theft. Reynolds was sentenced to twenty years for the class B felony burglary, and eight years for the class C burglary, sentences to run consecutively. In addition, Reynolds received three years for each class D felony theft, sentences to run concurrently with the class B felony burglary sentence. Further, the court suspended ten years of the twenty year sentence, the entire eight year sentence, and three years of each class D felony theft sentence.

## DECISION

I. *Evidence of Prior Uncharged Misconduct*

 Reynolds argues that the trial court erred in permitting Teresa Cummins to testi-

---

**3.** The occupants of the house were Denise Atkins, Chad Sarber, Angie Weeks and Jennifer Gee.

**4.** Teresa Cummins is Reynolds' and Ron's sister.

fy that she had returned a stolen answering machine to K–Mart for Reynolds in exchange for cash. Specifically, Reynolds argues that Cummins' testimony was inadmissible uncharged misconduct evidence. The State contends that the trial court did not err because the evidence was introduced to show Reynolds' motive. Specifically, the State argues that the evidence was "introduced to support the State's theory that the defendant was engaged in a crime-spree, stealing whatever he could, to support his cocaine habit." State's Brief, p. 9. We agree with Reynolds.

Indiana Rule of Evidence 404(b) provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show action in conformity therewith. It may however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

Further, the exceptions listed in Evid.R. 404(b) are available only when a defendant goes beyond merely denying the charged crime and affirmatively presents a claim contrary to the charge. *Bolin v. State* (1994), Ind.App., 634 N.E.2d 546, 550. The State may then respond by offering evidence of prior crimes, wrongs or acts to the extent relevant to prove an issue of genuine dispute. *Id.*

In *Bolin*, the defendant was charged with arson for hire. The trial court permitted witness Hendrick to testify that Bolin had hired him for an uncharged arson. This court found that the trial court had erred in admitting testimony about the uncharged arson because none of the Evid.R. 404(b) exceptions were in dispute.

■ Here, at trial, the State argued that Cummins' testimony was admissible to "show motive among other things and motive here is to obtain cash to trade in for drugs." (R. 228–29). The trial court overruled Reynolds' objection to the uncharged misconduct testimony, and allowed Cummins to testify. However, our review of the record reveals that none of the exceptions of Evid.R. 404(b) were in genuine dispute, and Reynolds had not gone beyond merely denying the charged

crimes so as to place his motive in dispute. Accordingly, the admission of Reynolds' prior uncharged misconduct was error.

■ We must now determine whether reversal is required. *See, Bolin*, at 550. The erroneous admission of evidence will result in reversal only if there was prejudice to the defendant's substantial rights. *Id.* We must determine whether the "record as a whole reveals that the erroneously admitted evidence was likely to have had a prejudicial impact upon the mind of the average juror thereby contributing to the verdict." *Id.*

In *Bolin*, we observed that:

> The only evidence which connected Bolin to a crime came from Hendrick. He connected Bolin to the instant arson for hire and to the uncharged arson for hire. Other witnesses corroborated Hendrick's involvement with the [uncharged arson] but did not connect Bolin to the charged fire with anything other than statements Hendrick would have made at or near the time of the [uncharged] fire. Also, three factors present here increase the likelihood that the jury could have drawn the 'forbidden inference.' The similarity between the charged crime and the uncharged crime was great; the evidence of the uncharged crime was more abundant and more extensive than that for the charged crime; and the State relied upon the uncharged crime, in part, in its final argument.

*Id.* Our review of the Bolin record led us to the conclusion that the erroneous admission of evidence was likely to have had a prejudicial impact so as to have contributed to the guilty verdict.

Reynolds attempts to analogize his case to *Bolin*. However, our review of the record reveals that the facts of this case are distinguishable from *Bolin*. In *Bolin*, the only evidence connecting Bolin to the charged fire was Hendrick's testimony and statements that Hendrick would have made at or near the time of the uncharged fire. However, here, both Powers' testimony and corroborating evidence connected Reynolds to the burglaries and thefts.

Powers testified that Reynolds broke into Ludwig's, removed boxes of sports trading cards, and took them to Cummins' trailer. Cummins confirmed that Reynolds had brought boxes of sports trading cards to her home. Powers further testified that Reynolds and his brother, Ron, made a second trip to the store later that evening to retrieve the lug wrench which Reynolds had left behind and to obtain more trading cards. Cummins confirmed that Reynolds returned to her trailer with additional cards. Powers testified that she received a $200.00 check from Cummins for the trading cards, and that Cummins sent a $700 check to Reynolds' parents. Again, Cummins confirmed Powers' testimony. The police's search of Cummins' trailer, where Reynolds was found sleeping, revealed "thousands" of trading cards, many of which Ludwig identified as those stolen from his store.

Powers further testified that on March 9, she and Reynolds broke into a house on 9th Road during the daylight hours. They took, among other things, a television, a VCR, and a pillowcase full of jewelry while Ron waited outside in Powers' white Capri. Another witness testified that he saw a dark haired man sitting in a white Mustang or Capri outside the 9th Road residence. The four occupants of the home reported numerous items missing, including a television, a VCR, jewelry, and a pillowcase taken from one of the beds.

■ Further, the three factors in *Bolin* which increased the likelihood that the jury could have drawn the "forbidden inference" are not present in this case. There is no great similarity between the burglaries and thefts, and Teresa Cummins returning a stolen answering machine to K–Mart for cash. The evidence of the uncharged crime was not more abundant and more extensive than that for the charged crime, and there is nothing

to suggest that the State relied on the uncharged crime in its final argument.[5] The record as a whole does not disclose that the erroneously admitted evidence was likely to have had a prejudicial impact upon the mind of the average juror, thereby contributing to the verdict.

II. *Sentencing*

The trial court sentenced Reynolds to 20 years for the class B felony burglary[6], and eight years for the class C felony burglary[7], sentences to run consecutively. In addition, Reynolds received three years for each class D felony theft, sentences to run concurrently with the class B felony burglary sentence. Further, the trial court suspended ten years of the twenty year sentence, the entire eight year sentence, and three years of each sentence for the class D felony thefts. Reynolds now argues that the trial court erred in sentencing him. We disagree.

A. *Manifestly Unreasonable*

Reynolds first contends that his sentence was manifestly unreasonable. Specifically, Reynolds argues that "there are two areas which make the sentence manifestly unreasonable: a) the length of the individual sentences and b) the Court making the sentences consecutive." Reynolds' Brief, p. 28. We disagree.

■ The determination of a sentence rests with the discretion of the trial court. *Duvall v. State* (1989), Ind., 540 N.E.2d 34, 36. An appellate court will not alter a sentence authorized by statute unless the sentence is manifestly unreasonable in light of the offender and the offense. *Durbin v. State* (1989), Ind.App., 547 N.E.2d 1096, 1100. A sentence is not manifestly unreasonable unless no reasonable person could consider the sentence appropriate. *Reichard v. State* (1987), Ind., 510 N.E.2d 163, 167.

5. Reynolds did not provide us with a transcript of the final arguments.

6. Ind.Code 35–50–2–5 provides in pertinent part:
A person who commits a Class B felony shall be imprisoned for a fixed term of ten (10) years, with not more than ten (10) years added for aggravating circumstances or not more than four years subtracted for mitigating circumstances.

7. Ind.Code 35–50–2–6 provides in pertinent part:

A person who commits a Class C felony shall be imprisoned for a fixed term of four (4) years, with not more than four (4) years added for aggravating circumstances or not more than two (2) years subtracted for mitigating circumstances. . . .

In support of his argument that his sentence is manifestly unreasonable, Reynolds directs us to *Saunders v. State* (1992), Ind., 584 N.E.2d 1087, wherein our supreme court found that a 140 year sentence was manifestly unreasonable in light of the nature of the offense and the character of the offender; and *Beno v. State* (1991), Ind., 581 N.E.2d 922, a case with a similar result. However, *Saunders* and *Beno* are distinguishable from the facts before us.

In *Saunders,* the defendant received one 70 year sentence for three dealing convictions and another 70 year sentence for three conspiracy convictions. The trial court ordered the dealing convictions to run consecutively to the conspiracy convictions, resulting in a total sentence of 140 years. The trial court identified the following aggravating circumstances: 1) Saunders' history of criminal activity, 2) Saunders committed the crimes while on parole, and 3) the likelihood that Saunders would commit another crime in light of his history. Our supreme court found that Saunders' 140 year sentence was manifestly unreasonable. Specifically, that court found that Saunders' two prior convictions, coupled with the fact that Saunders had committed the drug offenses while on parole, warranted an aggravated sentence such as that reflected by the trial court's decision to order sentences on the conspiracy counts to run consecutively to each other. However, our supreme court found that "the trial court's decision to order that the dealing counts run consecutively to the closely related conspiracy counts [rendered] appellant's sentence manifestly unreasonable." *Id.* at 1089.

In *Beno,* the defendant received a 74 year sentence for two counts of dealing, and one count of maintaining a common nuisance. Our supreme court found that Beno's sentence was manifestly unreasonable because consecutive sentences were inappropriate where the crimes committed were "nearly identical state-sponsored buys." *Beno,* at 924. Further, our supreme court noted that during sentencing, the trial judge had noted that part of his motivation for making the sentences consecutive was to make an example of Beno to other drug dealers. Justice

Krahulik observed that although one of the many goals of sentencing is the deterrent effect, a trial court should not be allowed to use the sentencing process as a method of sending a philosophical or political message.

■ Here, Reynolds received 20 years for the class B felony burglary and eight years for the class C felony burglary, sentences to run consecutively, and three years for each class D felony theft, sentences to run concurrently, not consecutively, with the class B felony burglary sentence. Further, the trial court suspended ten years of the class B burglary sentence, the entire eight year sentence, and three years of each class D felony theft sentence. As the State points out, Reynolds received a "sentence requiring him to serve a term of only ten years, that is, the presumptive sentence of only one of his felonies." State's Brief, p. 13. In addition, there were no state-sponsored drug buys, and there is nothing in the record to indicate that the trial court was making an example of Reynolds or using the sentencing process as a method of sending a philosophical or political message. Reynolds' sentence is not manifestly unreasonable.

### B. *Statement of Aggravating Factors*

Reynolds next contends that the "[j]udgment fails to list any specific facts which would support the statutory aggravating factors supporting enhancement of the sentence herein." Reynolds' Brief, p. 25. According to Reynolds, this court must either remand the case with instructions that the presumptive sentences be imposed or for resentencing. We disagree.

■ Trial court judges are vested with wide discretion to impose enhanced sentences, consecutive sentences, or both. *Ridenour v. State* (1994), Ind.App., 639 N.E.2d 288, 296. However, if sentences are enhanced, made consecutive, or both, due to the aggravating circumstances, the trial court must explain the reasons underlying the sentencing decision. *Id.* An adequate explanation contains 1) a list of the aggravating and mitigating factors, 2) a statement of the specific reasons why each factor is considered to be aggravating or mitigating, and 3) an evaluation and balancing of the factors.

*Henderson v. State* (1986), Ind., 489 N.E.2d 68, 71. There are two purposes for requiring a specific statement of reasons for enhancing a sentence. First, it insures that the trial court considered only proper grounds when imposing sentence and thus safeguards against the imposition of arbitrary and capricious sentences. *Id.* Second, it enables the appellate court to determine the reasonableness of the sentence imposed. *Id.*

In *Henderson,* the trial court determined that the following aggravating factors warranted enhancing the presumptive burglary sentence of ten years by an additional seven years:

(1) defendant has a history of criminal activity,

(2) defendant is in need of correctional rehabilitative treatment that can only be provided by his commitment to a penal facility, and

(3) imposition of any reduced sentence for these offenses would depreciate the seriousness of the crimes that were committed.

*Id.* at 71.

On appeal, Henderson argued that the trial court had not sufficiently stated the aggravating factors which had warranted an enhancement of his burglary sentence. Our supreme court agreed with Henderson that the trial court's statement of reasons for imposing an enhanced sentence did not satisfy the statutory mandate to provide a detailed statement of reasons rather than general or conclusory assertions which track the language of the statute. However, Chief Justice Shepard further noted that the trial court had taken into consideration the presentence report before he imposed the sentence. The information contained in the presentence report showed that Henderson had a history of criminal activity. Our supreme

court further stated that "when the record indicates that the trial judge engaged in the evaluative processes but simply did not sufficiently articulate his reason for enhancing sentence and the record indicates that the sentence imposed was not manifestly unreasonable, then the purposes underlying the specificity requirement have been satisfied." *Id.* at 72.

▆▆▆ Here, the trial court determined that the following aggravating circumstances warranted enhancing Reynolds' sentences.[8]

. a. extensive prior criminal history;

b. suspension of sentence as to incarceration would depreciate the seriousness of the crimes; and

c. the strong probability of the Defendant committing additional felonies in the future.

(R. 87–88). We agree with Reynolds that the sentencing order does not sufficiently list the underlying facts which warranted an enhancement of his sentences. However, as the State points out, the trial court stated as follows at the sentencing hearing:

Well, I find the aggravating circumstances which imposing a suspended sentence or putting you on probation for a substantial period of time would decrease the seriousness of the offense that you've committed. The probability of you committing another offense is extremely strong with the past record you had, you know, twenty two (22) years old. You've been in and out of the system in a lot of different counties, Monroe County, Marshall County. Now you've got a Lawrence. I don't know how many of these—Starke, St. Joe, Fulton County. You haven't been real selective and nailed it into one (1) county other than Monroe. You seemed to do a lot down in Monroe early on. So I

8. We observe that the trial court found no mitigating circumstances. Reynolds contends that the trial court erred in failing to find mitigating factors because "[t]here was ... uncontradicted testimony which would establish mitigating factors which were not specified in the judgment." Reynolds' Brief, p. 26. We disagree with Reynolds' contention. Our supreme court responded as follows to a similar argument in *Fugate v. State* (1993), Ind., 608 N.E.2d 1370:

The finding of mitigating factors is discretionary with the trial court. The trial court is not required to find the presence of mitigating factors. If the trial court does not find the existence of a mitigating factor after it has been argued by counsel, the trial court is not obligated to explain why it has found that the factor does not exist. (citations omitted). *Id.* at 1379. The trial court did not err in failing to find mitigating factors.

think the circumstances under which these occurred are very likely to reoccur....

I find that the aggravating circumstances certainly outweigh the mitigating....

(R. 454–55). Further, Reynolds' pre-sentence report reveals two pages of prior criminal history. The record reveals that the trial court engaged in the evaluative processes, and we have previously determined that Reynolds' sentence was not manifestly unreasonable. Accordingly, the purposes underlying the specificity requirement have been satisfied, and we need not remand this case to the trial court.

### C. Sufficiency of Aggravating Factors

Lastly, Reynolds argues that the "trial court failed to find ... aggravating factors sufficient to justify an enhanced sentence." We disagree.

 The law is well settled that enhancement of presumptive sentences, along with imposition of consecutive sentences, may be supported by a single aggravating circumstance. *Davidson v. State* (1990), Ind., 558 N.E.2d 1077, 1092; *Ridenour, supra,* at 298. Here, the trial court identified three aggravating circumstances. The trial court did not err in sentencing Reynolds.

### III. Sufficiency of the Evidence

■ Our standard of review for sufficiency of the evidence is well-settled. We will neither reweigh the evidence nor judge the credibility of witnesses. We examine only the evidence most favorable to the judgment along with all reasonable inferences to be drawn therefrom, and, if there is substantial evidence of probative value to support the conviction, it will not be set aside. *Geans v. State* (1993), Ind.App., 623 N.E.2d 435, 437.

■ Reynolds contends that there is insufficient evidence to support his convictions. Specifically, Reynolds makes several challenges to the sufficiency of the evidence, each of which is based on a claim related to Powers' alleged lack of credibility.[9] We decline Reynolds' invitation to judge Powers' credibility. There is sufficient evidence to support Reynolds' convictions.

Affirmed.

SHARPNACK, C.J., and RILEY, J., concur.

---

9. For example, in support of his contention that there is insufficient evidence to support his conviction for the burglary and theft at Ludwig's, Reynolds argues in pertinent part as follows:

Powers' ... testimony is so replete with inconsistencies, so obviously motivated by interest and bias on her part, and finally ... her mentally impaired condition by virtue of being addicted and under the influence of drugs, renders her testimony incredible (not capable of being given any credence or credibility), and therefore insufficient as a matter of law to support the conviction of the Defendant in this particular case. Reynolds' Brief, p. 18.

Reynolds further argues as follows:

There is a veritable shopping list of impeachment factors present with regard to [Powers'] testimony:

1. She had a very bad cocaine habit.
2. She plead guilty in exchange for a suspended sentence and an agreement to testify against the other co-defendants.
3. She made inconsistent and contradictory statements about the various incidents involved in these cases in the past....
4. She has had a false reporting charge pending in Porter County.
5. She was under the influence of drugs at the time the events she was alleging had occurred....
6. She had a number of other criminal cases in other counties.
7. She had attempted to commit suicide and was hospitalized after giving her statements to the police. (Citations omitted).

Reynolds' Brief, p. 11–12, 16–17, and 20–21.