Scottie J. RATLIFF, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 43A03–9912–CR–446.

Court of Appeals of Indiana.

Dec. 28, 2000.

David C. Kolbe, Warsaw, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

**ROBB, Judge**

Scottie Ratliff appeals from his convictions for operating while intoxicated ("OWI"), a Class A misdemeanor, operating a vehicle with at least .10% of alcohol by weight in blood ("operating per se"), a Class C misdemeanor, resisting law enforcement, a Class D felony, and possession of marijuana, also a Class D felony, following a bench trial. He was sentenced to a total of seven years incarceration, with six months conditionally suspended, and was ordered to pay fines totaling $12,000. We affirm in part and remand in part.

### Issues[1]

Ratliff raises six issues, which we consolidate and restate as three:

1. Whether he was deprived of a fair trial due to prosecutorial misconduct and trial court bias;

2. Whether he was denied the effective assistance of trial counsel; and

3. Whether the trial court erred in sentencing him.

In addition, we raise the following issues *sua sponte:* whether the trial court properly merged Ratliff's operating per se and OWI convictions.

### Facts and Procedural History

On July 17, 1999, Kosciusko County Sheriff's Department Officer Dean Hill responded to a call from a county resident that a drunk driver had driven through his yard twice. The resident gave a description of the car and a license plate number. Officer Hill drove to the area and observed a vehicle which matched the description and license plate reported by the resident. Officer Hill observed Ratliff driving the

---

1. Ratliff has filed a Motion for Settlement of Record of Proceedings, in which he asks this court to include as part of the record the Affidavit of Trial Counsel addressed to one of the issues raised in this appeal. Ratliff wishes said affidavit to be included as part of the record pursuant to Appellate Rule 7.2(A)(3)(c), which provides that "[i]f no report of all or part of the evidence or proceedings at the hearing or trial was or is being made ... a party may prepare a statement of the evidence or proceedings from the best available means, including his recollection." However, the affidavit concerns matters outside the proceedings before the trial court, and therefore, is not proper for inclusion in the record pursuant to this Rule. We therefore deny Ratliff's motion, and have not considered the affidavit in our decision.

vehicle and also observed a passenger in the front seat. In the course of following the car, Officer Hill observed Ratliff driving slightly off the side of the roadway and speeding through a residential area. Officer Hill then activated his emergency lights and siren, but Ratliff continued driving at an increased rate of speed, disregarded a stop sign, drove in and out of cornfields along the roadside, drove into a school parking lot at an excessive rate of speed, drove through the school playground and into a cornfield, where the car disappeared.

When Officer Hill and assisting officers found the car, no one was in the driver's seat, although the passenger was still in the car, passed out. Footprints leading away from the car led officers to Ratliff, who was lying face down with a clear plastic bag underneath his body. The bag contained four more bags, each of which contained a green, leafy substance later determined to be marijuana. Ratliff was determined to have a blood alcohol content of .137%, and also tested positive for cocaine and marijuana.

Ratliff was charged with OWI, operating per se, possession of marijuana and resisting law enforcement. He was also charged with the OWI enhancements to a Class D felony due to an alleged prior conviction. At his initial hearing, Ratliff was determined to be indigent, and counsel was appointed to represent him. At Ratliff's jury trial, he was found guilty of all four charges. The State then moved to dismiss the two counts alleging penalty enhancements due to a prior conviction, which motion was granted. At sentencing, the trial court merged the operating per se conviction with the OWI conviction for purposes of sentencing, and sentenced Ratliff to an enhanced term of one year,

with six months to be suspended if Ratliff paid $1,402.50 for property damage he caused during this incident. He was also fined $500. Ratliff was also sentenced to an enhanced term of three years for the resisting law enforcement conviction and fined $10,000, and three years for the possession conviction, plus a fine of $1,500. In addition, the sentences were ordered to run consecutively. Altogether, Ratliff was sentenced to seven years, with the possibility of six months suspended, and fined $12,000. Ratliff now appeals.

*Discussion and Decision*

### I. Denial of Fair Trial

Ratliff alleges that he was denied a fair trial due to "pervasive" prosecutorial misconduct: the State charged Ratliff with the OWI enhancements, with no basis to support such enhancements, and offered a plea agreement which included a plea of guilty to OWI as a Class D felony; the State improperly "denigrated" Ratliff's right to remain silent in his opening statement; the State elicited testimony which Ratliff believes to be improper; and the State was belligerent to Ratliff and his counsel.[2] He also alleges that the trial court's bias against him facilitated the misconduct and contributed to denying him a fair trial.

#### A. Prosecutorial Misconduct

##### 1. Standard of Review

When reviewing a charge of prosecutorial misconduct, we employ a two-step analysis: first, we consider whether the prosecutor engaged in misconduct; and second, we consider all the circumstances of the case to determine whether such misconduct placed the defendant in a position of grave peril to which he should not have been subjected. *Sa-*

---

2. Ratliff also alleges, in his Summary of Argument, that the State violated the standing discovery order for criminal cases in Kosciusko County by failing to provide to the defense a copy of the printout showing Ratliff's blood alcohol content and then seeking to introduce the document at trial. First, Ratliff fails to

expound upon or advance this contention in the Argument section of his brief, and it is, therefore, waived. Moreover, the only evidence of this alleged misconduct is contained in the affidavit of counsel which we have previously declined to include as part of the record of proceedings herein.

*maniego v. State,* 679 N.E.2d 944, 949 (Ind.Ct.App.1997), *trans. denied.* The latter is measured not by the degree of impropriety of the misconduct, but by the probable persuasive effect of the misconduct on the jury's decision and whether there were repeated examples of misconduct that would evince a deliberate attempt to unfairly prejudice the defendant. *Id.* at 949–50.

### 2. Instances of Alleged Misconduct

#### a. Enhancements

Ratliff first contends that the State committed misconduct in pursuing charges for penalty enhancements to the OWI charges without any basis to prove the required element that Ratliff had a prior conviction. However, because the enhancements were dismissed and never brought before the jury, there was no opportunity for an improper persuasive effect on the jury's verdict, and therefore, no error. Whether or not Ratliff did in fact have such a prior conviction is not relevant if, at the time the State filed the charges, it had a good faith belief that such a prior conviction existed. We have no cause to believe that the State did not have such a good faith belief, and given the fact that the State dismissed the charges, there was no demonstrable harm to Ratliff.

#### b. Opening Statement

■ Ratliff also alleges that in its opening statement, the State improperly denigrated his right to remain silent by stating:

What can you expect that the defense will try and present? Well the State's not quite sure, but the State believes in some way, shape or form we're going to come up with a mystery man. A Richard Kimbell. A man who took off or disappeared, who was actually driving the vehicle instead of the comatose passenger or Mr. Ratliff.

R. 205–06. Ratliff did not object to this statement, and therefore, to avoid waiver, he argues that this statement was so egregious as to rise to the level of fundamental error, or, in the alternative, that his trial counsel was ineffective for failing to object. We will address the ineffectiveness claim separately below.

The State's comments do presuppose that Ratliff would be presenting evidence at trial in his defense, which he clearly did not have to do. Ratliff did testify at trial, and testified that a man by the name of Chris Luck drove Ratliff's car on the day in question. Ratliff testified that he met Mr. Luck for the first time the day of the incident, that Mr. Luck was driving his vehicle at all times in question, and that Mr. Luck disappeared once the vehicle came to a stop in the cornfield. However, Ratliff has not alleged that he would not have presented evidence absent the State's comments, nor has he alleged that he felt compelled to conform his evidence to the State's supposition. Because Ratliff did testify, the State's comments, even if improper, did not subject him to grave peril.

#### c. Improper Testimony

■ Ratliff also points to several instances in which he believes the State asked improper questions or elicited improper testimony. First, he alleges that the State purposely tried to portray him as a drug dealer when it asked the State Police Chemist if 101 grams of marijuana was "a lot of marijuana ... relative to personal use?" R. 217. However, Ratliff did not object to this question, and any error is therefore waived.

■ He also alleges that the State improperly raised the inference that Ratliff was a drug dealer by asking one of its witnesses about the street values of illegal substances, whether the packaging of the marijuana in this case was common to marijuana packaged for sale, and whether the amount of marijuana found in this case was consistent with amounts possessed by a dealer. The State also asked the witness to open each of the four bags in which the marijuana was packaged. When Ratliff objected to "turning things into a specta-

cle," the State responded that Ratliff had created the spectacle by separately packaging the marijuana. The trial court overruled the objection. To the extent that the State committed misconduct by improperly raising an inference of greater wrong-doing than was charged, we do not believe that any such inference had a probable persuasive effect on the jury's determination of whether or not Ratliff *possessed* marijuana. There was ample evidence to support the possession conviction, and Ratliff was not placed in grave peril by the State's questions.

■ Ratliff contends that the State elicited improper hearsay testimony from Officer Hill regarding statements made by the resident who called about a vehicle driving through his yard. The resident did not testify at Ratliff's trial, but Officer Hill testified to what the resident had reported in his calls to the police, including the description of the vehicle and the license plate number, as well as its approximate location and direction of travel. On cross examination, Ratliff attempted to elicit information about possible obstructions in the resident's line of sight, which would have effected his observations. However, this line of questioning was not allowed on the State's objection. Ratliff argues that the testimony elicited from Officer Hill on direct regarding the resident's observations was "relevant and material to proving the crime charged," and that he was precluded from exploring those same observations. We see no deliberate solicitation of improper testimony by the State here. Ratliff objected to the line of questioning, and his objection was overruled. The State was allowed to pursue a line of inquiry into the information an eyewitness had provided to Officer Hill, which information initiated Officer Hill's investigation. The questioning did not seek inflammatory or clearly improper answers, nor did the testimony establish any elements of the charged crimes. There was no misconduct on the State's part in asking the questions.

■ Finally, Ratliff contends that the State committed misconduct during its cross-examination of him by implying that Ratliff had left the state of Kentucky and come to Indiana because of an outstanding warrant for him in Kentucky and that he was, therefore, a "criminal." The State referred to the Kentucky warrant in response to questioning on direct examination regarding why Ratliff had left Kentucky. The warrant was raised not to show a prior crime, but to test Ratliff's credibility and veracity. Asking such a question is not clearly misconduct and did not place Ratliff in grave peril.

### d. Attitude Toward Ratliff and Ratliff's Counsel

■ Ratliff contends that the State committed misconduct in displaying a belligerent attitude toward both himself and his counsel. For instance, when Ratliff asked the State to repeat a question, the prosecutor responded, "No, I don't think I want to repeat it again." R. 415. When objecting to defense counsel's question to one of the investigating officers concerning the odor of alcohol, the prosecutor stated, "This is ridiculous." R. 365. These and other examples throughout the record of questions or comments by the State betray, at the very least, overzealous advocacy, if not outright disrespect. Although we would caution the prosecutor to be mindful in the future of openly displaying such an attitude, we do not find these questions and comments to have placed Ratliff in grave peril.

### B. Trial Court Bias

#### 1. Standard of Review

■ A judge is presumed unbiased and unprejudiced, and to rebut the presumption, the defendant must establish from the judge's conduct actual bias or prejudice which places the defendant in jeopardy. *Cook v. State*, 612 N.E.2d 1085, 1088 (Ind.Ct.App.1993). Adverse rulings do not support a claim of bias. *Id.*

### 2. Adverse Rulings by Trial Court

■ Ratliff contends that the trial court contributed to the prosecutorial misconduct by overwhelmingly sustaining the State's objections, overruling defense objections, allowing improper "evidentiary forays" by the State and failing to *sua sponte* admonish the jury regarding alleged improprieties by the State. He argues that the trial court facilitated the State's misconduct. However, having found no misconduct so egregious as to place Ratliff in grave peril, and finding that none of the evidentiary rulings pointed to by the defense were outright wrong, we cannot say that Ratliff has made a case for bias on the part of the trial court.

### II. Ineffective Assistance of Counsel

Ratliff contends that, for those instances of prosecutorial misconduct cited above to which his counsel did not object, his counsel was ineffective. He specifically points to the failure to object to the State's comments during its opening statements which Ratliff believes compromised his right to remain silent.

### A. Standard of Review

■ To prevail on a claim of ineffective assistance of counsel, the petitioner must show that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's performance prejudiced defendant. *Smith v. State,* 689 N.E.2d 1238, 1243 (Ind.1997). In evaluating the first element, we presume counsel is competent and the petitioner must present clear and convincing evidence to rebut this presumption. *Id.* To establish prejudice, the petitioner must show that counsel's errors so undermined the proper functioning of the adversarial process that the ultimate result is neither just nor reliable. *Id.* at 1244.

### B. Counsel's Failure to Object

■ Having already determined that the State did not commit misconduct which placed Ratliff in grave peril, we are constrained to say that his trial counsel's conduct in failing to object to any of those instances of alleged misconduct did not fall below prevailing professional norms and did not prejudice Ratliff. Counsel was active in making objections during the State's case and in defending the State's objections during his presentation of evidence. Ratliff received the effective assistance of counsel.

### III. Sentencing

Ratliff next contends that the trial court erred in sentencing him. He argues that his sentence is erroneous for several reasons: 1) the trial court erred in failing to find aggravating circumstances specifically to support consecutive sentences; 2) the aggregate sentence of seven years exceeds the allowable sentence pursuant to Indiana Code section 35–50–1–2(c); 3) the trial court erred in offering to reduce his fines and suspend a portion of his sentence if he paid restitution to a victim; and 4) the trial court failed to conduct a hearing pursuant to Indiana Code section 35–38–1–18(a) to determine his ability to pay the fines assessed as part of his sentence.

### A. Standard of Review

■ The determination of a defendant's sentence is within the trial court's discretion, and will be reversed only upon a showing of abuse of discretion. *Ballard v. State,* 715 N.E.2d 1276, 1279 (Ind.Ct. App.1999). The legislature prescribes penalties for crimes and the trial court's discretion does not extend beyond the statutory limits. *Id.* Therefore, in reviewing a sentence, we will consider whether it was statutorily authorized. *Id.*

### B. Statement Supporting Consecutive Sentences

■ Ratliff contends that the trial court erred in failing to enumerate aggravating circumstances specifically supporting the imposition of consecutive sentences. The trial court is vested with wide discretion to impose enhanced sentences, consecutive sentences, or both. *Reynolds*

*v. State,* 651 N.E.2d 313, 318 (Ind.Ct.App. 1995). Although enhancing a sentence and imposing consecutive sentences are separate and distinct decisions, they are governed by the same statutory aggravating circumstances. *Price v. State,* 725 N.E.2d 82, 86 (Ind.2000). *See also* Ind.Code § 35–38–1–7.1(b) ("The court may consider the following factors as aggravating circumstances or as favoring imposing consecutive terms of imprisonment. . . .").

■■■ If a presumptive sentence is enhanced, or nonmandatory consecutive sentences imposed, or both, the trial judge must state the reasons underlying the sentence. Ind.Code § 35–38–1–3(3); *Reynolds,* 651 N.E.2d at 318. When a trial court imposes consecutive sentences, we examine the record to ensure that the court explained its reasons for selecting the sentence it imposed. *Price,* 725 N.E.2d at 86. The trial court's sentencing statement must identify the significant aggravating and mitigating circumstances, state the specific facts supporting a finding of the aggravators and mitigators, and demonstrate that the trial court evaluated and balanced the mitigating and aggravating circumstances in determining the sentence. *Id.* The same factors may be used both to enhance a presumptive sentence and to justify consecutive sentences. *Miller v. State,* 716 N.E.2d 367, 371 (Ind. 1999).

In *Price,* the trial court both enhanced the defendant's sentences and ordered them to be served consecutively. The trial court identified six aggravating factors and two mitigating factors, referred to the facts upon which it based its findings, and demonstrated that it had evaluated and balanced the aggravators and mitigators in imposing the sentences. Because at least two of the aggravators were listed in Indiana Code section 35–38–1–7.1(b) permitting trial court consideration when evaluating whether to impose an enhanced sentence or consecutive sentences, our supreme court held that there was no error in the trial court's failure to specify separate reasons for ordering the sentences to run consecutively. *Price,* 725 N.E.2d at 86.

■■■ Likewise, in this case, the trial court's sentencing order indicates that no mitigating factors were found, lists five aggravating factors, and states that "[t]he Court FINDS that the aggravating factors warrant a sentence beyond the presumptive." R. 103. The order also reflects that "[t]he sentences ordered in Counts I, III, and IV shall be served consecutively." R. 104. However, in reviewing the sufficiency of a sentencing statement, we are not limited to review of the written sentencing order, but may also look at the entire record. *Hardebeck v. State,* 656 N.E.2d 486, 492 (Ind.Ct.App.1995), *trans. denied.* The trial court's statements at the sentencing hearing refer to the specific facts supporting the aggravating factors and demonstrate that the trial court engaged in the required balancing process. Two of the aggravating circumstances are found in Indiana Code section 35–38–1–7.1(b): prior criminal history and the need for correctional treatment in a penal facility. Thus, the trial court's failure to find separate aggravating factors to impose both enhanced and consecutive sentences is not fatal to the trial court's sentencing determination, assuming the sentences are otherwise authorized by statute.

C. Consecutive Sentence Limitation

Ratliff also contends that the trial court erred when it sentenced him to consecutive terms totaling seven years because such sentence is in contravention of Indiana Code section 35–50–1–2(c). Section 35–50–1–2 states:

> [T]he court shall determine whether terms of imprisonment shall be served concurrently or consecutively. . . . However, . . . the total of the consecutive terms of imprisonment . . . to which the defendant is sentenced for felony convictions arising out of *an episode of criminal conduct* shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

Ind.Code § 35–50–1–2(c) (emphasis added). Ratliff contends that the crimes of which he was convicted and for which he was sentenced arose out of an "episode of criminal conduct." Because the most serious crimes for which Ratliff was convicted were two Class D felonies, he contends that the maximum allowable sentence under this statute is the presumptive sentence for a Class C felony, or four years.[3]

An "episode of criminal conduct" is defined in the statute as "offenses or a connected series of offenses that are closely related in time, place, and circumstance." Ind.Code § 35–50–1–2(b). In addressing the meaning of a criminal episode, we have stated that:

> Episode means an occurrence or connected series of occurrences and developments which may be viewed as distinctive and apart although part of a larger or more comprehensive series. This would cover the simultaneous robbery of seven individuals, the killing of several people with successive shots from a gun, the successive burning of three pieces of property, or such contemporaneous and related crimes as burglary and larceny, or kidnapping and robbery.

*Tedlock v. State*, 656 N.E.2d 273, 276 (Ind. Ct.App.1995) (quoting *State v. Ferraro*, 8 Haw.App. 284, 800 P.2d 623, 629 (1990)). We further stated that

> the singleness of a criminal episode should be based on whether the alleged conduct was so closely related in time, place and circumstances that a complete account of one charge cannot be related without referring to details of the other charge.

*Id.*

In *Tedlock*, the defendant's four convictions arose from crimes that were committed against different victims, at different times, and at different places, in a time period that spanned approximately two years. Under those circumstances, we held that Tedlock's four convictions did not constitute one criminal episode. *Id.*

Conversely, in *Ballard v. State*, we held that the defendant's convictions of residential entry and two batteries were a single episode of criminal conduct where a complete account of the batteries could not be related without mentioning the residential entry. The batteries were committed as a direct result of the residential entry: if the defendant had not unlawfully entered the residence of his former girlfriend, he would not have discovered her with another man and subsequently battered them. 715 N.E.2d at 1281. Likewise, in *Purdy v. State*, we held that defendant's convictions of intimidation, resisting law enforcement, and battery were a single episode of criminal conduct. The defendant went to his former girlfriend's home, pounded on her door and threatened to kick it in, despite having been ordered by the court not to contact her. As the victim tried to run next door to use the telephone, the defendant grabbed her by the shoulders, bruising her. The police were called to the scene. When they arrived, they attempted to handcuff the defendant, but he fought with them, kicked and spat at one officer, and attempted to flee. As the officers placed him in the paddy wagon, he threatened to kill one of the officers. We held that the defendant's actions constituted a single episode, as they all took place during a relatively short period of time and all were related to his assault on the victim. 727 N.E.2d at 1093.

Here, Ratliff's crimes are not so disconnected in time, place and circumstance as in *Tedlock*. However, neither

---

**3.** The other crime for which Ratliff was convicted was a misdemeanor. The State has argued in its brief that the misdemeanor sentence is not controlled by Indiana Code section 35–50–1–2. However, in *Purdy v. State*, 727 N.E.2d 1091 (Ind.Ct.App.2000), *trans. denied*, this court held in a case of first impression that the consecutive sentence limitation contained in Indiana Code section 35–50–1–2 does, in fact, apply in instances in which a misdemeanor sentence ordered served consecutively to a felony sentence results in a total sentence which exceeds the statutory limitation. *Id.* at 1093–94.

are they so interrelated as in *Ballard* and *Purdy*. Although it may be true that Ratliff's OWI and resisting law enforcement convictions could not be related without referring to both crimes, the possession of marijuana conviction is wholly separate, related only by the fact that the crime was discovered in the course of pursuing a fleeing drunk driver. The dissent believes that because all three crimes were discovered at the same time, they constitute a single episode of criminal conduct. *See* op. at 436. However, we can find no case law to support the proposition that discovery of the crimes is a determinative factor. Ratliff's possession of marijuana was a separate and distinct act from his acts of operating while intoxicated and resisting law enforcement. That the three criminal acts were "part of a larger or more comprehensive series" of acts which were discovered simultaneously does not distract from the fact that they are distinct acts, not all of which bear a direct relation to the others. Therefore, we hold that Ratliff's actions did not constitute a single episode of criminal conduct, and the trial court was not limited by Indiana Code section 35–50–1–2(b) in sentencing Ratliff to consecutive terms of imprisonment.

## D. Restitution

 Ratliff next contends that the trial court erred in "bargaining" with him to modify his sentence if he paid restitution to a victim of his crimes. At the sentencing hearing, the trial court indicated that it was sentencing Ratliff to one year incarceration for the OWI conviction, with "six months of that period of incarceration suspended on the condition [Ratliff] pay restitution ... in the sum of one thousand four hundred two dollars fifty cents for property damage as a result of [Ratliff's] conduct," and entered a restitution order in favor of the victim. R. 172. This term of Ratliff's sentence is reflected in the written sentencing order. R. 104. Also during the sentencing hearing, the trial court stated:

> Mr. Ratliff, if you're willing to find restitution a high priority on your agenda,

I'd be willing to waive the fine of ten thousand dollars [for the resisting law enforcement conviction]. I'd be willing to waive the fine of fifteen hundred dollars on the marijuana.... We'll start with seven years, restitution would knock it down to six and a half. Restitution, I'm willing to waive substantial fines and reconsider your sentence in this matter....

R. 174.

Ratliff contends that "not only was the sentence an improper use of the power of the court, it provided no guarantee to [him]." Brief of Appellant at 25. This is because there are requirements for modification of a sentence with which Ratliff would still be required to comply. However, we see no issue for our resolution here today. If the trial court's statements were intended as an inducement to Ratliff to pay the restitution, they are only a benefit to Ratliff. The trial court could have ordered Ratliff to pay restitution without offering any reduction in his sentence in return. *See* Ind.Code § 35–50–5–3(a). If Ratliff pays the restitution, files a motion to modify his sentence and the motion is granted, then he has suffered no harm. If Ratliff does not pay the restitution and serves his entire sentence, again, he has suffered no harm because he is in no worse position than he would have been otherwise. Only if Ratliff pays the restitution, files a motion to modify, and the motion is denied, may he have an issue for appeal, but not until such time as that occurs. The sentence as it stands without considering any reduction for payment of restitution is within the trial court's discretion. Until such time as Ratliff pays such restitution and seeks modification, there is no issue for our resolution.

## E. Imposition of Fines

Finally, Ratliff contends that the trial court erred in ordering him to pay fines as a part of his sentence without holding a hearing pursuant to Indiana Code section 35–38–1–18(a) to determine whether or not he is indigent. The State concedes that

"when a fine is imposed upon an indigent, the trial court must expressly state that the defendant shall not be imprisoned for failing to pay the fine." Brief of Appellee at 16 (quoting *Cranor v. State*, 699 N.E.2d 284, 287 (Ind.Ct.App.1998)). Thus, the State urges us to remand to the trial court to amend its sentencing order to so reflect.

■ Section 35–38–1–18(a) states that "[w]henever the court imposes a fine, it *shall* conduct a hearing to determine whether the convicted person is indigent." In *Everroad v. State*, 730 N.E.2d 222 (Ind. Ct.App.2000), another panel of this court examined the case law interpreting this section and reiterated that section 35–38–1–18(a) "imposes an affirmative duty on a trial court to hold an indigency hearing when imposing a fine on a defendant." *Id.* at 227. This is so even if the defendant had counsel appointed to represent him at trial: "A finding of indigency for the purpose of appointing defense counsel is not conclusive in regard to a defendant's ability to pay a fine." *Id.* at 225 (quoting *Marshall v. State*, 505 N.E.2d 853, 857 (Ind.Ct.App.1987)).

■ In this case, after sentencing Ratliff, the trial court advised him of his right to appeal the convictions and to have counsel appointed for him if he could not afford to employ an attorney at his own expense. The trial court then asked if Ratliff requested that the court appoint an attorney for purposes of appeal. Upon Ratliff's affirmative response, the court appointed counsel for Ratliff's appeal.[4] Thus, it appears that although a full-blown hearing with evidence of Ratliff's assets and debts was not held, the purpose of the hearing requirement was met. If it was in fact the trial court's intention to stand on its previous determination that Ratliff was indigent, then the sentencing statement needs to reflect that Ratliff cannot be imprisoned for failure to pay the fines. If, instead, the trial court intended by its silence on this point in the sentencing order to change its previous determination of indigency despite appointing appellate counsel, then the trial court must hold the hearing required by Indiana Code section 35–38–1–18(a). Thus, we remand on this issue for the trial court to either amend its sentencing statement or hold an indigency hearing.

## IV. Merger

In addition, we address the following issue *sua sponte:* whether the trial court properly "merged" the operating per se conviction with the OWI conviction for purposes of sentencing.

■ The jury convicted Ratliff of both OWI and operating per se. The trial court correctly noted that operating per se is a lesser included offense of OWI. However, the trial court improperly "merged" the two convictions for purposes of sentencing. Merging, without also vacating the conviction, is not sufficient. Our court has held that "where a defendant is found guilty of both the greater offense and the lesser included offense, the trial court's proper procedure is to vacate the conviction for the lesser included offense and enter a judgment of conviction and sentence only upon the greater offense." *Webster v. State*, 708 N.E.2d 610, 616 (Ind.Ct.App. 1999), *trans. denied.* Therefore, we remand this cause to the trial court with an order to vacate Ratliff's conviction of the lesser included offense of operating per se and enter judgment of conviction and sentence only upon the greater offense of OWI.

## Conclusion

Ratliff was not deprived of a fair trial by prosecutorial misconduct. The instances cited by Ratliff either do not amount to misconduct at all, or did not place him in grave peril. Accordingly, Ratliff was not denied the effective assistance of counsel

---

4. In *Everroad,* the defendant indicated at his sentencing that he did not wish to appeal. Thus, there was no reference to the defendant's financial circumstances at sentencing, and we held that this fact "militate[s] even more strongly" for a mandatory indigency hearing. 730 N.E.2d at 227.

when his counsel failed to object to certain instances of alleged misconduct. Moreover, he has not demonstrated any bias on the part of the trial court. The trial court either needs to amend its sentencing order with respect to the fines imposed upon Ratliff as part of his sentence or hold an indigency hearing. In all other respects, the sentence is affirmed. Finally, the trial court must vacate Ratliff's conviction for operating per se because it is a lesser included offense of the OWI conviction.

Affirmed in part, remanded in part.

MATTINGLY, J., concurs.

· MATHIAS, J., concurs in part and dissents in part, with opinion.

MATHIAS, Judge, concurring and dissenting.

I concur in all but Part III.C of the majority opinion.

An "episode of criminal conduct" is defined by statute as "offenses or a connected series of offenses that are closely related in time, place, and circumstance." Ind. Code § 35–50–1–2(b) (1998). Here, Ratliff operated a vehicle while intoxicated and fled from a police officer who attempted to stop him. After he fell in his attempt to flee, a plastic bag containing marijuana was found on the ground beneath him.

The majority holds that the OVWI and resisting law enforcement convictions, each of which required a volitional act, are part of the same criminal episode but that "the possession of marijuana conviction is wholly separate, related only by the fact that the crime was discovered in the course of pursuing a fleeing drunk driver." Op. at 434. The possession of marijuana offense, which does not require a volitional act, occurred at the same time and place as the other offenses. Nevertheless, the majority excludes the possession offense from the criminal episode because the marijuana was merely "discovered" at the time of the other offenses. Under the majority's rationale, every possession offense, by virtue of its non-volitional nature, will never be part of any criminal episode. I believe

such a result contravenes both the language and intent of the statute, although I fully acknowledge that there is no authority on the issue.

Ratliff's possession of marijuana was directly and inextricably connected to the other offenses, as the marijuana would never have been discovered had Ratliff not been driving while intoxicated. Because the three offenses are part of the same criminal episode and none of them are crimes of violence, I would remand with instructions to reduce the total sentence to four years.

· In any event, I believe this area of sentencing law would benefit from clarification by our supreme court or by the General Assembly.