Danny F. HAGGARD, Appellant–
Defendant,

v.

STATE of Indiana, Appellee.

No. 48A02–0311–PC–980.

Court of Appeals of Indiana.

June 23, 2004.

Susan K. Carpenter, Public Defender of Indiana, C. Brent Martin, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Danny Haggard appeals from the denial of his petition for post-conviction relief. He presents one main issue for our review, whether he received ineffective assistance of appellate counsel.[1]

We affirm in part, reverse in part, and remand.

The facts relating to Haggard's conviction and sentencing as enunciated by this court in Haggard's direct appeal follow:

"On November 28, 2000, Haggard was charged with seven counts of forgery, all as Class C felonies. He was released on bond within a day or two of his arrest. Then, on January 6, 2001, the Anderson police received a phone call reporting that there was a man at 4114 Fernway Drive, Anderson, Indiana who had injected drugs and was threatening to commit suicide. Officers Abshire and Brooks were dispatched to the residence. Shortly after they arrived at the residence, Officers Williams and Sollars arrived. The officers yelled, announced their presence, and knocked, but no one answered.

After hearing someone calling for help from inside the residence, the officers called the station and received permission from a superior officer to enter the residence. After several kicks to the door, the officers gained entry to the house. They later discovered that the door had been propped closed with a crutch. Upon entry, they heard someone calling from the basement of the residence.

Once in the basement, the officers noticed Haggard sitting amidst what appeared to be a pile of dirty clothes, wearing nothing but a camouflage pattern shirt. Haggard had a sock tied around his right arm, like a tourniquet, and was rocking with his hands between his legs. An empty syringe was on a table beside Haggard. Officer Sollars positioned himself behind a water heater, approximately two feet from Haggard. From there, Officer Sollars noticed a gun between Haggard's legs and hands. Officer Sollars then repeatedly yelled to Haggard to drop the gun. Just as Haggard began to raise the weapon and Officer Sollars prepared to shoot Haggard, Haggard fell backward.

---

**1.** On April 12, 2004, Haggard filed his Verified Motion to Expedite Appeal. The fully briefed case was received from the Office of the Clerk on April 27, 2004. The motion is hereby granted.

He appeared to have a seizure and then fall asleep.

As Haggard was lying on the basement floor, the officers grabbed Haggard's gun (which turned out to be a BB gun) and attempted to handcuff him for their own safety. After his right hand was cuffed, Haggard awoke and began to struggle with the officers. The officers were eventually able to cuff Haggard's left hand also. He was then rolled onto his stomach. At this time, Officer Sollars noticed what he thought was a back brace under Haggard's shirt while he was patting Haggard on the back in an attempt to calm him.

Two of the officers then climbed the stairs to do a protective sweep and inform the medics that Haggard was in the basement. Haggard began to fight the two officers that remained in the basement. During this scuffle, Haggard turned and bit Officer Sollars' gloved hand twice without piercing his skin and was able to throw Officer Abshire approximately three to four feet into a sump pump area. As Haggard continued to struggle, he spit into Officer Sollars' face. The officers used pepper spray on him, with no apparent effect. Eventually, the officers and medics were able to subdue Haggard, get him cuffed onto a stretcher and then finally into an ambulance and on his way to a hospital.

Officer Sollars rode in the ambulance with Haggard. En route, Haggard asked Officer Sollars several times why he had not shot him. Officer Sollars then asked Haggard why he would want to be shot. Haggard replied, 'that is the whole reason why you were called here.' Haggard told Officer Sollars that he was 'too chicken to' shoot himself. Also while in the ambulance Haggard told Officer Sollars that he had AIDS, even though later his blood tests came back positive for only Hepatitis C and co-caine. The officers seized Haggard's shirt after it had been removed from him at the hospital. It was at this point that they noticed that body armor had been sewn into the front and back of the shirt.

On January 8, 2001, an information was filed charging Haggard with five counts: possession of cocaine, battery by body waste, resisting law enforcement, battery resulting in bodily injury, and unlawful use of body armor, all Class D felonies. Then on February 8, 2001, Haggard's bond in his pending forgery case was revoked after a hearing. A jury trial on the battery case took place in late April 2001, and Haggard was found guilty of all five offenses. Among other issues, the jurors were instructed on the defense of intoxication.

On May 8, 2001, Haggard pled guilty to all seven counts in his forgery case. Consolidated sentencing was set for May 23, 2001. The trial court judge sentenced Haggard to the Department of Correction for three years on each of the D felony charges. The sentences on the first four counts were ordered to run concurrently, but Haggard's sentence on Count V, unlawful use of body armor, was ordered to run consecutively to the sentence on the other four counts, for a total of six years." *Haggard v. State,* 771 N.E.2d 668, 670–71 (Ind.Ct.App. 2002), (citations omitted), *trans. denied.*

Post-conviction proceedings do not afford a petitioner with an opportunity for a "super-appeal." *Ben–Yisrayl v. State,* 738 N.E.2d 253, 258 (Ind.2000), *cert. denied,* 534 U.S. 1164, 122 S.Ct. 1178, 152 L.Ed.2d 120 (2002). Post-conviction proceedings provide an opportunity to raise issues which were not known to the petitioner at the time of the original trial or were not available upon direct appeal. *Id.* The peti-

tioner must establish his grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5). In appealing from the denial of post-conviction relief, the petitioner bears the burden to show that the evidence is without conflict and leads to a conclusion opposite that reached by the post-conviction court. *Hackett v. State*, 661 N.E.2d 1231, 1233 (Ind.Ct.App. 1996), *trans denied.*

The standard of review for a claim of ineffective assistance of appellate counsel is essentially the same as for trial counsel in that the defendant must show appellate counsel was deficient in his performance and the deficiency resulted in prejudice. *Hooker v. State*, 799 N.E.2d 561, 570 (Ind. Ct.App.2003), *trans. denied.* To satisfy the first prong, the petitioner must show that counsel's performance was deficient in that counsel's representation fell below an objective standard of reasonableness and that counsel committed errors so serious that petitioner did not have the "counsel" guaranteed by the Sixth Amendment. *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002). To show prejudice, the petitioner must show a reasonable probability that but for counsel's errors the result of the proceeding would have been different. *Id.* However, because the two components are separate and independent inquiries, " '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed.'" *Landis v. State*, 749 N.E.2d 1130, 1134 (Ind.2001) (quoting *Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

■ Ineffective assistance of appellate counsel claims generally fall into three basic categories: (1) denial of access to an appeal, (2) waiver of issues, and (3) failure to present issues well. *Hooker*, 799 N.E.2d at 570. To show that counsel was ineffective for failing to raise an issue upon appeal, the defendant must overcome the strongest presumption of adequate assistance. *Id.* To evaluate the performance prong when counsel waived issues upon appeal, we apply the following test: (1) whether the unraised issues are significant and obvious from the record, and (2) whether the unraised issues are "clearly stronger" than the raised issues. *Id.* at 571. If that analysis demonstrates deficient performance by counsel, the court then examines whether the issues which appellate counsel failed to raise would have been more likely to result in reversal or an order for a new trial. *Id.*

■ Haggard presents two grounds which he asserts support his claim of ineffective assistance of appellate counsel. The first is that counsel should have presented the issue of whether the trial court's order that the sentence for unlawful use of body armor be served consecutively to the sentences for the other convictions for a total of six years was in contravention of Indiana Code § 35–50–1–2(c) (Burns Code Ed. Supp.2003), which states:

> "[T]he court shall determine whether terms of imprisonment shall be served concurrently or consecutively.... However, except for crimes of violence, the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IC 35–50–2–8 and IC 35–50–2–10, to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted."

An "episode of criminal conduct" is defined as "offenses or a connected series of offenses that are closely related in time, place, and circumstance." I.C. § 35–50–1–

2(b). This court, in addressing the meaning of criminal episode, stated:

> " 'Episode' means 'an occurrence or connected series of occurrences and developments which may be viewed as distinctive and apart although part of a larger or more comprehensive series.' This would cover the simultaneous robbery of seven individuals, the killing of several people with successive shots from a gun, the successive burning of three pieces of property, or such contemporaneous and related crimes as burglary and larceny, or kidnapping and robbery." *Tedlock v. State*, 656 N.E.2d 273, 276 (Ind.Ct.App.1995) (quoting *State v. Ferraro*, 8 Haw.App. 284, 800 P.2d 623, 628 (1990)).

Further, we noted the proposition that " 'the singleness of a criminal episode should be based on whether the alleged conduct was so closely related in time, place, and circumstances that a complete account of one charge cannot be related without referring to details of the other charge.' " *Id.* (quoting *Ferraro*, 800 P.2d at 629).

Haggard contends that the crimes he committed all arose out of an episode of criminal conduct and that the trial court erred in ordering his sentence to be six years. He opines that his sentence should have been limited to four years because that is the presumptive sentence of a Class C felony, which is the class of felony one class higher than those for which he was convicted. *See* Ind.Code § 35–50–2–6 (Burns Code Ed. Repl.1998).

At the post-conviction hearing, the State took the position that the issue of consecutive sentences was addressed by this court upon direct appeal. Specifically, the prosecutor referred to the opinion from this court which reads:

> "Had the trial court decided to order all five convictions to be served consecutively, Haggard could have faced an effective sentence of up to fifteen years.

> * * *

> Given the maximum possible sentence Haggard could have faced in his battery case, the nature of his offenses and Haggard's character, it was not manifestly unreasonable for the trial court to sentence him to serve his sentence for unlawful use of body armor consecutively to his other four convictions in his battery case for an aggregate of six years executed in that case." *Haggard*, 771 N.E.2d at 676–77.

Given the manner in which the post-conviction court ultimately denied the petition for post-conviction relief, it is possible that the post-conviction court was convinced by this argument. Furthermore, the post-conviction court acknowledged that the Court of Appeals and the Supreme Court may review sentences sua sponte and tacitly suggested that our opinion and the Supreme Court's denial of transfer proved that the original sentence was correct.[2]

While this court appreciates the respect shown us through the suggestion that we make no errors and correct errors upon our own accord, we acknowledge that such is not always true. In the direct appeal before this court, no argument was made that the order that the sentences be served consecutively for a total period of six years incarceration was improper under I.C. § 35–50–1–2(c). The statement that Haggard could have been sentenced

---

**2.** The appendix contains no copy of the post-conviction court's order denying post-conviction relief. Rather, only a copy of the Chronological Case Summary was included for our review. Thus, our review of the post-conviction court's reasoning for denying the petition for post-conviction relief is limited, though not impossible.

to fifteen years imprisonment for the five Class D felony convictions was a gratuitous comment upon an issue not before the court. As such, it is not res judicata and does not control this decision.[3] And for the reasons to be stated, we conclude that the statement was erroneous.

In its appellee's brief, the State has changed course from the argument presented at the post-conviction hearing and has joined Haggard in asserting that his sentence was erroneous. In so doing, the State asserts that Haggard's appellate counsel was ineffective for failing to bring the issue and that Haggard should be re-sentenced.

In *Ballard v. State*, 715 N.E.2d 1276, 1281 (Ind.Ct.App.1999), this court held that an individual's convictions for one count of residential entry and two counts of battery were a single episode of criminal conduct. In reaching that decision, it was noted that the batteries were committed as a direct result of the residential entry and that had the defendant not unlawfully entered the residence, he would not have found the two victims and battered them. *Id.* Essentially, the *Ballard* court relied upon the necessity that a complete account of the events be presented together in order to explain the details of the crimes.

A similar result was reached in *Purdy v. State*, 727 N.E.2d 1091 (Ind.Ct.App.2000), *trans. denied.* In that case, this court held that the sentence defendant received for his convictions for intimidation, resisting law enforcement, and battery violated I.C. § 35-50-1-2(c). In reaching the decision, the court noted that Purdy's actions took place during a relatively short period of time and all were related to his assault on his former girlfriend. *Id.* at 1093. Specifically, Purdy had pounded on the door to his former girlfriend's home and threatened to kick it in. As she fled her home to get to the Village Pantry so that she could use the telephone there, Purdy grabbed her by her shoulders, bruising her. Once police arrived at the scene, they attempted to handcuff Purdy but he fought with them, kicked and spat at one officer, and attempted to flee. *Id.* at 1092.

Most recently, in *Johnican v. State*, 804 N.E.2d 211 (Ind.Ct.App.2004), this court held that where an individual possesses contraband on his person as he simultaneously commits other criminal offenses, the offenses should be deemed part of a single episode of conduct. In so doing, the *Johnican* court disagreed with the majority opinion written by a panel of this court in *Ratliff v. State*, 741 N.E.2d 424 (Ind.Ct.App.2000), *trans. denied.*

We need not here attempt to distinguish or reconcile this court's majority opinion in *Ratliff.* In that case a possession of marijuana charge was held to be an act separate and apart from the defendant's acts of operating while intoxicated and resisting law enforcement and was not a part of a single episode. Be that as it may, the State in the case before us concedes that

---

**3.** The doctrine of res judicata bars a later suit when an earlier suit resulted in a final judgment on the merits, was based upon proper jurisdiction, and involved the same cause of action and parties or privies as the later suit. *Hooker*, 799 N.E.2d at 575. Even were we to conclude that the doctrine of res judicata did apply in this situation, we would still review the merits of Haggard's claim. In *State v. Huffman*, 643 N.E.2d 899, 901 (Ind.1994), our Supreme Court noted that even though

the doctrine of res judicata may apply, we should maintain the option of reconsidering earlier cases in order to correct error. The Court stated that a "court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work manifest injustice." *Id.* (quotations omitted).

the offenses involved were a part of a single criminal episode.

As noted by the State, had Haggard not attempted to commit suicide by the use of the cocaine, the police would have never been called. Furthermore, it appears that Haggard's drug use precipitated the violent acts for resisting law enforcement. We agree with the State's assessment that the time, place, and circumstances of the criminal acts are causally related and the evidence significantly overlaps.[4] Thus, no grounds existed to order the sentences to be served consecutively based upon the belief that the drug possession charge was separate from the other acts committed.

■ A second ground for ordering the sentences to be served consecutively was proffered by the post-conviction court. At the post-conviction hearing, the court implied that the statute prohibiting the use of body armor was more akin to an enhancement and not a separate crime. Specifically, the trial court stated that "it is the way you commit a crime when you use body armor. That is the reason you got that statute." Transcript of Post–Conviction Hearing at 11. The court then stated, "It seems to me that is the very reason for having the statute that makes it an additional offense for committing a crime while wearing body armor. Please do not expect me to explain the rationale and thinking of the legislature, but it seems to me that is not ... it is a separate crime...." *Id.*

In reviewing Indiana Code § 35–47–5–13 (Burns Code Ed. Repl.1998), we discern nothing which indicates that it is an enhancement upon a sentence or which exempts sentences for convictions for the use of body armor from application of Indiana Code § 35–50–1–2(c). In this case, the use of body armor was part of the larger series of events in which Haggard resisted law enforcement and committed two counts of battery. Thus, it was part of an episode of criminal conduct, and the trial court should not have ordered that Haggard serve six years incarceration. Rather, the sentence should have been limited to four years.

■ Because this claim was brought as an issue of ineffective assistance of appellate counsel, we now must decide whether the issue was an obvious and significant issue which should have been presented. We conclude that it was such an issue and that Haggard was prejudiced by the failure to present it. As shown above, the law does not support the conclusion that the sentences could be ordered to be served consecutively for a period of six years incarceration. The acts constituted one episode of criminal conduct, and there is no reason to conclude anything other than that restriction on consecutive sentences applies to convictions for the unlawful use of body armor. Thus, Haggard's appellate counsel was ineffective for failing to present the issue, and the cause is remanded to the trial court to enter a sentence which conforms to the statutory restrictions.

■ As a second issue pertaining to his claim of ineffective assistance of counsel, Haggard claims that his convictions for resisting law enforcement and battery resulting in injury violate the prohibitions against double jeopardy. Specifically, he claims that the convictions are both based upon the single act of biting Officer Sollars.

---

4. At the post-conviction hearing, appellate counsel stated that he did not think that the events constituted a single episode because the drug possession occurred prior to any of the other events. A significant concern with this position is that the sentence for the possession of cocaine was not ordered to be served consecutively to the other sentences. Rather, it was the sentence for the conviction for the unlawful use of body armor which the trial court ordered to be served consecutive to the other sentences.

In *Alexander v. State*, 772 N.E.2d 476, 478 (Ind.Ct.App.2002), *opinion upon rehearing, trans. denied,* this court explained that a double jeopardy violation under the test announced in *Richardson v. State*, 717 N.E.2d 32 (Ind.1999), occurred when the evidentiary facts establishing one or more elements of one challenged offense establish the essential elements of the second challenged offense. Initially, Haggard's claim appears to have merit. For the two convictions of which Haggard complains, a critical piece of evidence is that he inflicted pain upon Officer Sollars by biting him. However, while the same type evidence was relied upon to prove both claims, the same evidence was not used because Officer Sollars testified that Haggard bit him twice and that the bites inflicted pain. Thus, there was no double jeopardy violation and Haggard's appellate counsel could not be ineffective for failing to present the issue upon appeal.

The decision of the post-conviction court is affirmed in part and reversed in part, and the cause is remanded for further proceedings not inconsistent with this decision.[5]

MAY, J., and VAIDIK, J., concur.

---

**5.** In a motion filed by Haggard, he asserts that his release date from incarceration will be August 6, 2004 if his sentence is revised to the maximum possible, which is four years. Thus, the trial court is ordered to expedite the revision of Haggard's sentence so that he may be released at the proper time. In this regard, we note that by joining Haggard's appellate position concerning the maximum sentence permissible, the State indicates no desire or intention to seek rehearing or transfer. Accordingly, the Clerk is directed to certify this opinion immediately.