Jeffrey L. COLE, Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 18A02–0506–CR–560.

Court of Appeals of Indiana.

June 5, 2006.

Joseph P. Hunter, Muncie, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ryan D. Johanningsmeier, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, Jeffrey L. Cole, challenges the trial court's imposition of maximum, consecutive sentences upon his convictions for Resisting Law Enforcement as a Class D felony and Possession of Chemical Reagents or Precursors with Intent to Manufacture as a Class D felony. Specifically, Cole claims that the crimes were part of a single episode of criminal conduct and that the trial court's discretion was

statutorily limited to imposition of an aggregate sentence not exceeding the presumptive sentence for a Class C felony, the next-higher class of felony than the most serious crime for which he was convicted.

We reverse and remand.

The underlying facts are not in dispute and reveal that on April 24, 2003, Cole was driving a Chevrolet Blazer in Muncie, Indiana when he was spotted by a police officer who knew that Cole had an outstanding warrant for his arrest for being an habitual traffic offender. When the police officer tried to pull Cole over, Cole fled, and the police chased him for approximately one-half hour. Cole was finally apprehended in nearby Yorktown. After the chase was over, the police searched the Blazer and discovered a tank which contained anhydrous ammonia which Cole planned to use in the manufacture of methamphetamine.

That same day the State charged Cole with Count I, dealing in methamphetamine as a Class B felony; Count II, resisting law enforcement as a Class D felony; Count III, possession of anhydrous ammonia with intent to manufacture methamphetamine as a Class C felony; and Count IV, possession of chemical reagents or precursors with intent to manufacture methamphetamine as a Class D felony. Cole also faced the previous charge of being an habitual traffic offender. On April 26, 2005, Cole pleaded guilty to Counts II and IV. Pursuant to the plea agreement, Cole also pleaded guilty to the charge of being an habitual traffic offender as a Class D felony. The plea agreement provided that sentencing would be left open to the discretion of the trial court and that the plea was made "without a waiver of any rights to modify or appeal the sentence...." App. at 37. The trial court accepted the plea and ordered a sentencing hearing to be held on May 23, 2005. At the conclusion of the May 23 hearing, the trial court sentenced Cole to the maximum sentence of three years upon both Counts II and IV, to be served consecutively. The trial court also sentenced Cole to eighteen months upon his conviction for being an habitual traffic offender, to be served concurrently with the three-year sentence in Count IV. Cole filed a notice of appeal on June 22, 2005.

■ Upon appeal, Cole does not challenge the sentence imposed upon his conviction for being an habitual traffic offender. Nor does he claim that the trial court erred in sentencing him to the maximum three-year sentences in Counts II and IV. He instead claims that the trial court erred in ordering that the sentences imposed in Counts II and IV run consecutively for a total of six years. Cole bases his claim upon Indiana Code § 35-50-1-2(c) (Burns Code Ed. Repl 2004), which states in relevant part:

"The court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time. However, except for crimes of violence, the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IC 35-50-2-8 and IC 35-50-2-10, to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted." [1]

1. This statute was amended in 2005 to replace the word "presumptive" with "advisory," reflecting the changes made to the Indiana sentencing statutes in response to *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *reh'g denied.* Since

Here, Cole pleaded guilty to committing two Class D felonies. Insisting that these crimes consisted of one episode of criminal conduct, Cole argues that his total term of imprisonment could not exceed four years, the presumptive sentence for a Class C felony. *See* Ind.Code § 35–50–2–6 (Burns Code Ed. Repl.2004). Neither party claims that the instant crimes were "crimes of violence" as mentioned in I.C. § 35–50–1–2(c). Thus, the sole issue presented upon appeal is whether the crimes Cole pleaded guilty to constituted a single episode of criminal conduct.

■ An "episode of criminal conduct" is defined as "offenses or a connected series of offenses that are closely related in time, place, and circumstance." I.C. § 35–50–1–2(b). An episode means an occurrence or connected series of occurrences and developments that may be viewed as distinctive and apart although part of a larger or more comprehensive series. *Johnican v. State*, 804 N.E.2d 211, 217 (Ind.Ct.App. 2004). The singleness of a criminal episode should be based upon whether the alleged conduct was so closely related in time, place, and circumstance that a complete account of one charge cannot be related without referring to the details of the other charge. *Id.*

We recognize that the case law deciding what constitutes an episode of criminal conduct for purposes of I.C. § 35–50–1–2(c) has not been wholly consistent. In *Ballard v. State*, 715 N.E.2d 1276, 1281 (Ind.Ct.App.1999), the court held that the defendant's convictions for one count of residential entry and two counts of battery constituted a single episode of criminal

conduct. The court noted that the batteries were committed as a direct result of the defendant's entry into the residence of his ex-girlfriend and that had he not unlawfully entered the residence, he would not have discovered his ex-girlfriend with another man and battered them. *Id.*

In *Purdy v. State*, 727 N.E.2d 1091 (Ind. Ct.App.2002), *trans. denied*, the defendant had pounded on and threatened to kick down the door on his former girlfriend's house. As she fled her home to get help, Purdy grabbed her by the shoulders, causing bruising. Once the police arrived at the scene and attempted to arrest Purdy, he resisted arrest by fighting, kicking, and even spitting on one officer. Purdy also attempted to flee. Upon appeal, the court held that the crimes for which Purdy was convicted, i.e. intimidation, battery, and resisting law enforcement, constituted one episode of criminal conduct, and the imposition of consecutive sentences exceeded the limits set forth in I.C. § 35–50–1–2(c). *Id.* at 1093. The court noted that all of the Purdy's acts took place during a relatively short period of time and were all related to his assault on his ex-girlfriend. *Id.*

More on point with the present case is *Ratliff v. State*, 741 N.E.2d 424 (Ind.Ct. App.2000), *trans. denied*. In that case, an individual telephoned the police to report that a suspected drunken driver had twice driven through his yard. The caller gave a detailed description of the car and its license number. Shortly thereafter, a sheriff's deputy noticed a car driving in an erratic manner and which matched the description given by the caller. When the

Cole committed the crimes in question and pleaded guilty thereto before the effective date of the amendments, we apply the version of the statute then in effect and use the term "presumptive sentence." *See Weaver v. State*, 845 N.E.2d 1066, 1071–72 (Ind.Ct.App.2006), *trans. pending; Patterson v. State*, 846 N.E.2d

723, 727 n. 5 (Ind.Ct.App.2006). *But see Samaniego-Hernandez v. State*, 839 N.E.2d 798, 805 (Ind.Ct.App.2005). Regardless of which version of the statute is applied, however, the substance of the statute upon which Cole bases his argument was unaffected by the amendments.

deputy attempted to stop the car, Ratliff, the driver, fled from the police and led them on a chase. Ratliff eventually abandoned the car and fled on foot, only to be found lying face-down in a cornfield with plastic bags containing marijuana concealed beneath him. Ratliff was later convicted of two counts of operating a vehicle while intoxicated, possession of marijuana, and resisting law enforcement. Although the trial court "merged" the two operating while intoxicated convictions for purposes of sentencing, it sentenced Ratliff to consecutive sentences on the remaining counts, for a total of seven years. Upon appeal, Ratliff claimed that his aggregate sentence of seven years exceeded the limits imposed by I.C. § 35–50–1–2(c). After discussing both *Ballard* and *Purdy*, the court wrote:

> "Although it may be true that Ratliff's OWI and resisting law enforcement convictions could not be related without referring to both crimes, the possession of marijuana conviction is wholly separate, related only by the fact that the crime was discovered in the course of pursuing a fleeing drunk driver.... That the three criminal acts were part of a larger or more comprehensive series of acts which were discovered simultaneously does not distract from the fact that they are distinct acts, not all of which bear a direct relation to the others. Therefore, we hold that Ratliff's actions did not constitute a single episode of criminal conduct, and the trial court was not limited by [I.C. § ] 35–50–1–2(b) in sentencing Ratliff to consecutive terms of imprisonment." *Id.* at 434 (internal quotations omitted).

Judge Mathias dissented from the *Ratliff* majority's conclusion with regard to sentencing and wrote separately, reasoning that "Ratliff's possession of marijuana was directly and inextricably connected to the other offenses, as the marijuana would never have been discovered had Ratliff not been driving while intoxicated." *Id.* at 436. Judge Mathias noted that the possession offense did not require a volitional act, and occurred at the same time and place as did the other offenses. *Id.* Under the *Ratliff* majority's rationale, Judge Mathias argued, "every possession offense, by virtue of its non-volitional nature, will never be part of any criminal episode," which he concluded contravened the language and intent of the statute. *Id.* In the present case, Cole acknowledges the holding in *Ratliff,* but encourages us to adopt Judge Mathias's position.

This is precisely what another panel of this court did in *Johnican v. State,* 804 N.E.2d 211 (Ind.Ct.App.2004). In that case, police officers observed the defendant, whom they knew to have an outstanding warrant for his arrest, walking across the street. When the officers ordered Johnican to stop, he instead walked away, pointed a gun at the officers several times, and attempted unsuccessfully to fire the weapon. Eventually, one of the officers shot Johnican in the chest, and Johnican dropped his gun and fled. Johnican was soon caught and, while Johnican was being treated at the hospital, one of the officers observed a small bag of cocaine fall out of Johnican's pants. Johnican was ultimately convicted of possession of cocaine, pointing a loaded firearm, and resisting law enforcement. The trial court then sentenced Johnican to twenty years on the possession charge, with a thirty-year habitual offender enhancement, and three years on the remaining convictions. All the sentences were to be served consecutively, for an aggregate sentence of fifty-six years. Upon appeal, Johnican claimed that his convictions arose out of a single episode of criminal conduct, and that his sentence exceeded the limits of I.C. § 35–50–1–2(c). The court discussed

*Ratliff* and agreed with Judge Mathias's position, writing, "Hence, we hold that where, as in this case, a defendant possesses contraband on his person as he simultaneously commits other criminal offenses, the offenses should be deemed part of a single episode of criminal conduct." 804 N.E.2d at 218. Therefore, the court held that Johnican's crimes were part of the same episode of criminal conduct and that his sentence had to be reduced to comply with I.C. § 35–50–1–2(c). *Id.*

Subsequent to this split among the panels of this court, two more cases have treated the issue of what constitutes an episode of criminal conduct for purposes of I.C. § 35–50–1–2(c). In *Haggard v. State,* 810 N.E.2d 751 (Ind.Ct.App.2004), the police responded to a report that the defendant had injected drugs and was threatening to kill himself. The police entered the house where the defendant was reported to be and discovered him in the basement. The police noticed that an empty syringe was on a table next to Haggard and that Haggard had a makeshift tourniquet tied around his arm. As they approached him, the police noticed that Haggard had a gun, which they ordered him to drop. As Haggard began to raise the gun, he fell backwards, appeared to have a seizure, and fell asleep. As the officers disarmed Haggard and attempted to place him in handcuffs, Haggard awoke and rolled onto his stomach. Haggard later began to struggle with the police, biting one officer in the hand twice and throwing another officer approximately four feet. Haggard also spit in one officer's face. Haggard later told the officer he spit upon that he had AIDS, which was untrue. When they recovered Haggard's shirt from the hospital, the police discovered that body armor had been sewn into it. Haggard was ultimately convicted of possession of cocaine, battery by body waste, resisting law enforcement, battery resulting in bodily injury, and unlawful use of body armor, all of which were Class D felonies. The trial court sentenced Haggard to three years each upon each conviction, four of which were ordered to run concurrently, but the sentence upon the conviction for unlawful use of body armor was ordered to run consecutively to the sentences on the other four convictions, for an aggregate sentence of six years. Haggard's sentence was upheld upon direct appeal. *See Haggard v. State,* 771 N.E.2d 668, 670–71 (Ind.Ct.App. 2002), *trans. denied.*

Haggard subsequently filed a petition for post-conviction relief, arguing that his appellate counsel was ineffective, among other reasons, for failing to argue that Haggard's six-year aggregate sentence ran afoul of I.C. § 35–50–1–2(c). The post-conviction court denied relief, and Haggard appealed. Upon appeal, this court[2] noted the split between *Ratliff* and *Johnican,* but partially because the State conceded upon appeal that Haggard's criminal acts constituted one episode of criminal conduct, wrote, "We need not here attempt to distinguish or reconcile this court's majority opinion in *Ratliff."* 810 N.E.2d at 756. The court further noted that, had Haggard not attempted to commit suicide by the use of cocaine, the police would never have been called and that Haggard's drug use precipitated his violent resistance. *Id.* Because the acts underlying the convictions were one episode of criminal conduct, Haggard's aggregate sentence could not exceed four years, the presumptive sentence for the next-highest felony. The court then concluded that Haggard's

---

**2.** The author of this opinion authored the opinion in Haggard's appeal from the denial of his post-conviction petition.

appellate counsel was ineffective for failing to present that issue and remanded the cause with instructions to enter a sentence which conformed with the statute. *Id.*

Lastly, in *Massey v. State*, 816 N.E.2d 979 (Ind.Ct.App.2004), the police executed a search warrant and saw the defendant leaving the subject house to the garage. When Massey saw the police, he attempted to flee but was captured. When caught, Massey was in possession of cocaine and a key to a vending machine which contained more cocaine and marijuana. In the garage was additional marijuana in plain view. The police also found in Massey's bedroom hydrocodone, cash, additional cocaine, and two handguns. Massey was eventually convicted of dealing in cocaine, possession of cocaine and a firearm, unlawful possession of a firearm by a serious violent felon, possession of a controlled substance, and possession of marijuana. The trial court "merged" the possession of cocaine conviction with the dealing in cocaine conviction for purposes of sentencing and sentenced Massey as follows: fifty years for dealing in cocaine, eight years for possession of cocaine and a firearm, twenty years for possession of a firearm by a serious violent felon, three years for possession of a controlled substance, and three years for possession of marijuana. The trial court ordered the fifty-year sentence to be served consecutively to the twenty-year sentence and ordered the remaining three sentences to be concurrent with one another and the other two sentences. Upon appeal, Massey claimed that his aggregate seventy-year sentence violated I.C. § 35–50–1–2(c) in that his convictions resulted from one episode of criminal conduct, and as such could not exceed fifty-five years, the presumptive sentence for murder—the next most-serious class of felony than the highest class of felony for which he was sentenced. The court agreed with Massey, noting that he was a serious violent felon in possession of a handgun and simultaneously in possession of an amount of cocaine large enough that his intent to deal could be inferred. Therefore, the court concluded that Massey's convictions "arose from a single episode of criminal conduct." *Id.* at 991. The author of this opinion concurred, writing separately that even if *Ratliff* was decided correctly under the facts of that case, that case was distinguishable from the one the court was then faced with. *Id.* at 992. This author continued:

> "Nevertheless, my assessment of Indiana case law tells me *Ratliff* was wrongly decided. As Judge May's lead opinion in [*Massey* ] notes, the crimes in *Ratliff* did not occur simultaneously. That fact, however, does not justify a conclusion to the effect that in order to have a single criminal episode all the crimes under analysis must have been committed simultaneously." *Id.*

Noting that the crimes in *Ballard* and *Purdy* were not simultaneous but still held to be single episodes of criminal conduct, this author concluded, "The facts in the case before us are clearly more reflective of a single criminal episode than those in *Ballard* and *Purdy*. For this reason I agree that the aggregate sentence in this case may not exceed fifty-five years." *Id.*

In the present case, we agree with Cole that *Ratliff* was incorrectly decided, and instead choose to follow *Johnican*,[3] *Hag-*

---

**3.** The State claims that the statements in *Johnican* referred to above are *dicta* in that the court ultimately held that the trial court in that case did not sentence the defendant in violation of I.C. § 35–50–1–2(c). However, in order to determine whether the trial court's sentence indeed violated I.C. § 35–50–1–2(c), the *Johnican* court first had to determine whether the crimes in question were part of one episode of criminal conduct. Only after

*gard,* and *Massey.* Indeed, we find this case essentially indistinguishable from *Johnican.* As in *Johnican,* here Cole's possession of the ammonia occurred at the same time and place as his act of fleeing from the police and would not have been discovered had Cole not been driving while being an habitual traffic offender and fled. We find the State's citation to *Monyhan v. State,* 780 N.E.2d 1187 (Ind.Ct.App.2003), unavailing. In that case, the court was considering the defendant's convictions for battery and attempted battery resulting from his actions at the jail where he threw punches at two officers at the jail, spat on an officer's shirt while being moved downstairs, spat blood on a third officer's face, and for kicking yet another officer. The court held that these incidents were "separate events" which occurred at different times and places. *Id.* at 1190. Suffice it to say that even if we agreed with the holding in *Monyhan,* it is readily distinguishable from the present case. Whereas Monyhan performed four different acts which resulted in the charges against him, here Cole fled from the police in a vehicle which contained ammonia. His possession occurred at the same time and place as his fleeing from the police. In other words, Cole possessed the ammonia as he simultaneously committed the crime of resisting law enforcement. We therefore conclude that the actions underlying Cole's convictions were one episode of criminal conduct. As such, his aggregate sentence cannot exceed four years, the presumptive sentence for a Class C felony, which is the next-highest level of felony than the crimes for which Cole was convicted. *See* I.C. § 35–50–1–2(c). Upon remand, the trial court is instructed to reduce Cole's aggregate sentence to no more than four years.

The judgment of the trial court is reversed, and the cause is remanded for proceedings consistent with this opinion.

KIRSCH, C.J., and DARDEN, J., concur.

---

it determined that they were was the court able to determine whether the trial court's imposed sentence exceeded the statutory lim-

its. Regardless, even if the statements in *Johnican* were *dicta,* we agree with them.