

**FILED**

Apr 30 2020, 6:25 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEES

Curtis T. Hill, Jr.
Attorney General of Indiana

Megan M. Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kevin MT Edwards,

*Appellant/Defendant,*

v.

State of Indiana,

*Appellee/Plaintiff.*

April 30, 2020

Court of Appeals Case No.
20A-CR-42

Appeal from the Lawrence
Superior Court

The Hon. John M. Plummer, III,
Judge

Trial Court Cause No.
47D01-1903-F5-518

**Bradford, Chief Judge.**

# Case Summary

In early 2019, Kevin Edwards was determined to be in possession of ten pornographic images of minors and eventually pled guilty to ten counts of possession of child pornography, three as Level 5 felonies and seven as Level 6 felonies. The trial court imposed an aggregate sentence of thirteen and one-half years of incarceration with one and one-half years suspended to probation. Edwards contends that because his ten possession charges constituted a single episode of criminal conduct, the trial court erred in imposing an aggregate sentence of longer than seven years. Because the State failed to produce enough evidence to allow a finding that Edward's crimes did not constitute an episode of criminal conduct, we affirm Edwards's convictions but remand for the imposition of a sentence of no longer than seven years.

# Facts and Procedural History

In December of 2018, Google LLC reported an incident of suspected possession of child pornography to the National Center for Missing and Exploited Children ("the NCEMC"), which forwarded a CyberTip report to the Indiana State Police, which forwarded it to Detective Kevin Getz. (Appellant's App. Vol. II p. 17). According to the CyberTip report, the person suspected of downloading pornographic images had used an email address of zombiebait0419@gmail.com, which was determined to belong to Edwards. Two further CyberTip reports indicated suspected incidents of downloading child pornography on December 7, 2018, at 16:30:04 hours Greenwich mean time and on December 7, 2018, at 16:26:39 Greenwich mean time. Four

images associated with the two incidents were forwarded along with the CyberTip reports. On January 15, 2019, Detective Getz forwarded a search warrant to Google requesting information and content related to the account associated with zombiebait0419@gmail.com. Google forwarded an additional six images of child pornography in the search-warrant return. Another search warrant was executed on Edwards's Bedford residence on March 21, 2019.

[3] On March 22, 2019, the State charged Edwards with ten counts of possession of child pornography, three as Level 5 felonies and seven as Level 6 felonies. On November 13, 2019, Edwards pled guilty as charged without a written plea agreement. On December 9, 2019, the trial court held a sentencing hearing, during which neither party presented any evidence and Edwards argued that his aggregate sentence could be no longer than seven years because his ten acts of possession constituted a single episode of criminal conduct. Without providing a rationale, the trial court rejected this argument, finding that Edwards's offenses were not part of a single episode of criminal conduct. The trial court proceeded to sentence Edwards to two and one-half years of incarceration for each of his Level 5 felony convictions and to one year for each of his Level 6 felony convictions, with all sentences to be served consecutively with the exception of one of the Level 6 felony sentences. The trial court suspended one and one-half years of Edward's aggregate thirteen-and-one-half-year sentence to probation.

# Discussion and Decision

[4]     The determination of a defendant's sentence is within the trial court's discretion, and will be reversed only upon a showing of abuse of discretion. *Pritscher v. State*, 675 N.E.2d 727, 729 (Ind. Ct. App. 1996). The legislature prescribes penalties for crimes and the trial court's discretion does not extend beyond the statutory limits. *Id*. Therefore, in reviewing a sentence, we will consider whether it was statutorily authorized. *Id*.

[5]     Indiana Code section 35-50-1-2 provides, in part, that "except for crimes of violence, the total of the consecutive terms of imprisonment […] to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct […] may not exceed seven (7) years [… i]f the most serious crime for which the defendant is sentenced is a Level 5 felony[.]" Because none of Edwards's convictions were for "crimes of violence" (as defined by Indiana Code section 35-50-1-2(a)),[1] if they all arose from "an episode of criminal conduct[,]" his aggregate sentence cannot exceed seven years of imprisonment. Ind. Code § 35-50-1-2(d)(2).

---

[1] Indiana Code section 35-42-4-4 provides, in part, as follows:

> [A] person who knowingly or intentionally possesses or accesses with intent to view […] a photograph […] that depicts or describes sexual conduct by a child who the person knows is less than eighteen (18) years of age or who appears to be less than eighteen (18) years of age, and that lacks serious literary, artistic, political, or scientific value commits possession of child pornography, a Level 6 felony. […] However, the offense of possession of child pornography […] is a Level 5 felony if […] the [photograph] depicts or describes sexual conduct by a child who the person knows is less than eighteen (18) years of age, or who appears to be less than eighteen (18) years of age, who […] is less than twelve (12) years of age[.]

[6]     The statutory definition of an "episode of criminal conduct" is that it "means offenses or a connected series of offenses that are closely related in time, place, and circumstance." Ind. Code § 35-50-1-2(b). Although we have stated that "'the singleness of a criminal episode should be based on whether the alleged conduct was so closely related in time, place and circumstances that a complete account of one charge cannot be related without referring to details of the other charge[,]'" *Tedlock v. State*, 656 N.E.2d 273, 276 (Ind. Ct. App. 1990) (quoting *State v. Ferraro*, 800 P.2d 623, 629 (Haw. Ct. App. 1990)), the Indiana Supreme Court has since said that "this is a bit of an overstatement" and elaborated as follows:

> We are of the view that although the ability to recount each charge without referring to the other can provide additional guidance on the question of whether a defendant's conduct constitutes an episode of criminal conduct, it is not a critical ingredient in resolving the question. Rather, the statute speaks in less absolute terms: "a connected series of offenses that are closely connected in time, place, and circumstance." I.C. § 35-50-1-2(b). And as we have observed, "*Tedlock* emphasizes the timing of the offenses" and "refers to the 'simultaneous' and 'contemporaneous' nature of the crimes which would constitute a single episode of criminal conduct." *Smith v. State*, 770 N.E.2d 290, 294 (Ind. 2002) (citing *Tedlock*, 656 N.E.2d at 276).

*Reed v. State*, 856 N.E.2d 1189, 1200 (Ind. 2006).

[7]     All the convictions in this case were for possession of child pornography, ten items of which, the parties seem to agree, were discovered to be in Edwards's possession at the same time. Edwards argues that this simultaneity renders all ten possessions a single episode of criminal conduct, even if all ten items were

acquired at different times. Edwards also argues that, even if the time of acquisition matters, the record indicates that he acquired all images at the same time. The State argues that, despite the *Reed* Court's emphasis on the simultaneous nature of the crimes at issue, simultaneous possession is not determinative if the images were acquired separately, as it argues they were.

# I. The Interaction Between Possession Crimes and Indiana Code Section 35-50-1-2(b)

[8] Over the past twenty years, a split has developed in this court regarding the interaction between possession crimes and the consecutive-sentence limitations in Indiana Code section 35-50-1-2. In *Ratliff v. State*, 741 N.E.2d 424 (Ind. Ct. App. 2000), *trans. denied*, the defendant was operating a vehicle while intoxicated and fled when police attempted to make a traffic stop. *Id.* at 427–28. When Ratliff was apprehended, he was found to be in possession of marijuana. *Id.* at 428. The State charged Ratliff with, and he was convicted of, operating a vehicle while intoxicated, resisting law enforcement, and marijuana possession; the trial court imposed an aggregate sentence in excess of that allowed pursuant to the then-current version of Indiana Code section 35-50-1-2(b), if it applied. *Id.* Ratliff argued on appeal that it did apply because all three of his convictions were part a single episode of criminal conduct. The majority disagreed:

> Although it may be true that Ratliff's OWI and resisting law enforcement convictions could not be related without referring to both crimes, the possession of marijuana conviction is wholly separate, related only by the fact that the crime was discovered in the course of pursuing a fleeing drunk driver. […] That the three

criminal acts were "part of a larger or more comprehensive series" of acts which were discovered simultaneously does not distract from the fact that they are distinct acts, not all of which bear a direct relation to the others. Therefore, we hold that Ratliff's actions did not constitute a single episode of criminal conduct, and the trial court was not limited by Indiana Code section 35-50-1-2(b) in sentencing Ratliff to consecutive terms of imprisonment.

*Id*. at 434.

[9] Judge Mathias dissented on this point, focusing on the fact that Ratliff had committed other crimes while simultaneously in possession of contraband:

The majority holds that the OVWI and resisting law enforcement convictions, each of which required a volitional act, are part of the same criminal episode but that "the possession of marijuana conviction is wholly separate, related only by the fact that the crime was discovered in the course of pursuing a fleeing drunk driver." Op. at 434. The possession of marijuana offense, which does not require a volitional act, occurred at the same time and place as the other offenses. Nevertheless, the majority excludes the possession offense from the criminal episode because the marijuana was merely "discovered" at the time of the other offenses. Under the majority's rationale, every possession offense, by virtue of its non-volitional nature, will never be part of any criminal episode. I believe such a result contravenes both the language and intent of the statute, although I fully acknowledge that there is no authority on the issue.

Ratliff's possession of marijuana was directly and inextricably connected to the other offenses, as the marijuana would never have been discovered had Ratliff not been driving while intoxicated.

*Id*. at 436 (Mathias, J., concurring in part, dissenting in part).

[10] Since *Ratliff*, two panels of this court have adopted the majority's approach, while two have adopted the dissent's. In *Johnican v. State*, 804 N.E.2d 211 (Ind.

Ct. App. 2004), a panel followed the dissent, holding that "where, as in this case, a defendant possesses contraband on his person as he simultaneously commits other criminal offenses, the offenses should be deemed part of a single episode of criminal conduct." *Id*. at 218. In June of 2006, we issued our opinion in *Cole v. State*, 850 N.E.2d 417 (Ind. Ct. App. 2006), in which a panel again followed Judge Mathias's approach from his dissent in *Ratliff*:

> In other words, Cole possessed the ammonia as he simultaneously committed the crime of resisting law enforcement. We therefore conclude that the actions underlying Cole's convictions were one episode of criminal conduct.

*Id*. at 423.

[11] In December of 2007, we issued our opinion in *Deshazier v. State*, 877 N.E.2d 200 (Ind. Ct. App. 2007), *trans. denied*, in which we followed the *Ratliff* majority:

> Here, no evidence exists as to when Deshazier came into possession of the handgun or marijuana. Possession is inherently a "continuing offense," which occurs from the time the defendant comes into possession of the contraband until the time he relinquishes control. *See State v. Phillips*, 172 N.C. App. 143, 615 S.E.2d 880, 882 (2005); *cf. United States v. Medina-Ramos*, 834 F.2d 874, 876 (10th Cir. 1987) ("[T]he acts that define the crime [of unlawful possession of a controlled substance] are the acts by which a defendant possesses the drug. The location at which the acts constituting possession occur is therefore the location at which the crime is committed for purposes of venue."). However, the evidence indicates that he must have come into possession of the handgun and marijuana at some point before he encountered the officers. […] Although the marijuana was in Deshazier's jacket while he resisted the officers, we do not find this fact to bring his

act of possession into the same episode of conduct as his resistance.

*Id*. at 212–13.

[12] Finally, in March of 2012, we issued our opinion in *Akers v. State*, 963 N.E.2d 615 (Ind. Ct. App. 2012), *trans. denied*. Following *Deshazier* and *Ratliff*, we concluded that Indiana Code section 35-50-1-2(b) did not apply to Akers's case because, *inter alia*, his crimes were not all part of an episode of criminal conduct:

> Here, Akers' possession of paraphernalia conviction is related to his other convictions only in the sense that his possession was discovered by police officers immediately after or during his other criminal acts. However, as in *Deshazier*, it is unclear from the evidence when Akers came into possession of the paraphernalia, making the timing of the offenses more distinguishable than at first glance. Further, unlike in *Johnican*, where the criminal actions of resisting law enforcement and pointing a firearm at another person resulted largely due to Johnican's possession of cocaine, here there is no evidence to suggest that Akers' battery of the victim or resisting arrest were fueled by his possession of paraphernalia. Thus, even putting chronological relation aside, Akers' conviction for possession of paraphernalia was not related in circumstance to his other convictions. There is no nexus between the acts of battery and the subsequent resisting arrest, and Akers' possession of paraphernalia.

*Id*. at 619–20.

[13] Because "[p]ossession is inherently a continuing offense, which occurs from the time the defendant comes into possession of the contraband until the time he relinquishes control[,]" *Deshazier*, 877 N.E.2d at 212 (citation omitted), such crimes require an approach different than the one used to evaluate more

ephemeral crimes. We conclude that the approach laid out by the majority in *Ratliff* and followed in *Deshazier* and *Akers* is the correct one. Indeed, we believe that that approach is mandated by Indiana Code section 35-50-1-2(b)'s requirement that a number of crimes which constitute an episode of criminal conduct must be "a connected series of offenses that are closely connected in time, place, *and circumstance*[,]" not just time and place. (Emphasis added). With this requirement in mind, we agree with the *Akers* court's conclusion that what is required is a "nexus" between the illegal possession and another crime—that the crimes must be "related in circumstance" as well as time and place. 963 N.E.2d at 620.

[14] In cases where a nexus does exist between a possession crime and another offense is committed while the possession continues, it is appropriate to find that the crimes are connected in time, place, and circumstance. For example, we agree with the result in *Johnican* because it is clear that Johnican committed the crimes of pointing a loaded firearm and resisting law enforcement *because* he was in possession of cocaine. In other words, his crimes were closely connected by circumstances, not just by time and place. For the same reason, we agree with the result in *Massey v. State*, 816 N.E.2d 979 (Ind. Ct. App. 2004), *trans. not sought*, in which we concluded that the simultaneous illegal possessions of a handgun and a large amount of cocaine were both part of the same episode of criminal conduct. *Id*. at 991. Again, this result is correct not only because the two possessions happened to be simultaneous, but because it was reasonable to

assume, under the circumstances, that Massey was carrying the handgun for protection while dealing cocaine.

[15]    As for cases where there is no nexus between a continuing possession and another continuing possession, there is still a way to evaluate whether those possessions are part of an episode of criminal conduct. While we agree with Judge Mathias's observation in his *Ratliff* dissent that continued possession does not require any volitional action, each possession necessarily involves at least one volitional act, the act of acquisition. *See Medina-Ramos*, 834 F.2d at 876 ("[T]he acts that define the crime [of unlawful possession of a controlled substance] are the acts by which a defendant possesses the drug."). So, in cases where the illegal possession at issue is completely passive and has no relation in circumstance with other continuing, illegal possessions, we believe that it is the act of acquisition that should be used to evaluate whether those offenses were part of an episode of criminal conduct.

## II.  Whether Edwards's Ten Possessions Constitute a Single Episode of Criminal Conduct

[16]    There does not seem to be a dispute that the images are connected by place of possession. There is, however, no indication of any nexus between any of the ten possessions at the time of their discovery; they were ten unconnected images which happened to be in Edwards's possession at the same time.[2] That

---

[2]  It is possible to envision acts related to the possession of the images that could have generated a nexus with one of the other possessions. For example, if Edwards had traded a copy of an image he already possessed

leaves us with timing, and because there was no indication of any nexus between any of the offenses on the date of their discovery, it is the date of acquisition that is of paramount importance to us. Common sense dictates that the simultaneous, or near-simultaneous, acquisition of several of the images would most likely constitute a single episode of criminal conduct, while the acquisition of the same images separately over the course of several days, weeks, or months would most likely not. Edwards argues that the record supports an inference that he acquired all of the images simultaneously or near simultaneously, because the CyberTip reports only indicate that two suspicious incidents occurred within four minutes of one another on December 7, 2018, shortly before his account was deactivated. The State maintains that the record supports an inference that Edwards acquired the images through ten distinct acts. We conclude that neither inference is warranted on the record before us.

[17] That said, because the State was seeking the imposition of a harsher penalty, we believe that it had the burden to produce evidence to justify that penalty, *see, e.g.*, *J.H. v. State*, 950 N.E.2d 731, 734 (Ind. Ct. App. 2011) (concluding that "the juvenile court failed to recognize that the State held the burden to establish" the amount of restitution), a burden that it failed to carry. To the extent that the State could have produced evidence that Edwards acquired some or all of the ten images separately, it did not do so. In the absence of sufficient

for a new image, we believe that that would generate a nexus between the two possessions. There is, however, no indication that anything like this occurred.

evidence to sustain a finding that Edwards acquired the ten images during more than one episode of criminal conduct, we remand for the imposition of a sentence of no longer than seven years of incarceration.

[18] We affirm in part, reverse in part, and remand with instructions.

Baker, J., and Pyle, J., concur.